1

Hon. Richard A. Jones

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

E.S., by and through her parents, R.S. and J.S., and JODI STERNOFF, both on their own behalf, and on behalf of all similarly situated individuals,

NO. 2:17-cv-1609-RAJ

12

13

Plaintiffs,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

14

v.

15

16

REGENCE BLUESHIELD; and CAMBIA HEALTH SOLUTIONS, INC., f/k/a THE REGENCE GROUP,

**Noted for Consideration:**
  **June 17, 2022**

17

18

Defendants.

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT
[Case No. 2:17-cv-1609-RAJ]

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

**Table of Contents**

I.    INTRODUCTION ...................................................................................1

II.   FACTS ...................................................................................................4

    A.   Procedural History. ......................................................................4

    B.   The SAC More Than Adequately Pleads Facts Sufficient to
       Support Claims. ...........................................................................4

    C.   Regence's Exclusion of Hearing Aids. ........................................5

III.  ARGUMENT ........................................................................................6

    A.   Plaintiffs Adequately Alleged Disability Discrimination
       Under Section 1557. .....................................................................6

       1.   *The Hearing Aid Exclusion is a form of proxy
          discrimination.* ..................................................................6

          a.   *Regence meets the needs of its non-disabled
             insureds by covering hearing screenings and
             diagnostic evaluations.* ...........................................7

          b.   *Disabled insureds who require hearing aids are
             targeted.* ..................................................................9

          c.   *Regence's exclusion of routine hearing
             examinations does not destroy the "fit."* ................ 11

       2.   *Plaintiffs properly assert a disparate impact
          discrimination claim.* ..................................................... 14

       3.   *Deliberate indifference discrimination based upon
          Regence's arbitrary exclusion of hearing aids.* ............... 18

    B.   Regence's Violation of RCW 48.43.0128 is a Violation of
       the Washington Law Against Discrimination. ............................ 21

    C.   Plaintiffs Adequately Pled a Violation of the CPA and for
       Declaratory and Injunctive Relief. ............................................ 24

IV.   CONCLUSION ................................................................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – i
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

**Table of Authorities**

Cases

*A.Z. v. Regence BlueShield*,
   333 F. Supp. 3d 1069 (W.D. Wash. 2018) ........................................................14

*Alexander v. Choate*,
   469 U.S. 287, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985) ...........................3, 14, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) .............................................................14

*Bennett v. Hardy*,
   113 Wn.2d 912, 783 P.2d 1258 (1990) .......................................................22, 23

*Bragdon v. Abbott*,
   524 U.S. 624, 118 S. Ct. 2196 (1998) .............................................................18

*C.P. v Blue Cross Blue Shield of Ill.*,
   536 F. Supp. 3d 791 (W.D. Wash. 2021) ..........................................................1

*Cameron v. Physicians Ins.*,
   2004 U.S. Dist. LEXIS 15268 (D. Or. July 26, 2004) ........................................22

*Carr v. United Healthcare Servs.*,
   2016 U.S. Dist. LEXIS 182561 (W.D. Wash. May 31, 2016) .....................11, 12

*Crowder v. Kitagawa*,
   81 F.3d 1480 (9th Cir. 1996) ..........................................................................20

*D.T. v. NECA/IBEW Family Med. Care Plan*,
   2017 U.S. Dist. LEXIS 195186 (W.D. Wash., Nov. 28, 2017) ..........................12

*Davis v. Guam*,
   932 F.3d 822 (9th Cir. 2019) ...........................................................................12

*Doe v. CVS Pharm., Inc.*,
   982 F.3d 1204 (9th Cir. 2020) .................................................................. passim

*Duvall v. Cty. of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ..........................................................................21

*Fain v. Crouch*,
   545 F. Supp. 3d 338 (S.D. W. Va. 2021) .........................................................17

*Floeting v. Grp. Health Coop.*,
   192 Wn.2d 848, 434 P.3d 39 (2019) .................................................................22

*Fuog v. CVS Pharm.*,
   2022 U.S. Dist. LEXIS 84045 (D. R.I., May 10, 2022) ....................1, 11, 16, 17

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – ii
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

*Galbraith v. TAPCO Credit Union,*
    88 Wn. App. 939, 946 P.2d 1242 (1997) ..................................................22

*Glanz v. Vernick,*
    750 F. Supp. 39 (D. Mass. 1990) ...........................................................18

*Hishon v. King & Spalding,*
    467 U.S. 69, 104 S. Ct. 2229 (1984) ......................................................12

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga.,*
    *Inc.,*
    892 F.3d 719 (5th Cir. 2018)..................................................................14

*Keodalah v. Allstate Ins. Co.,*
    194 Wn.2d 339, 449 P.3d 1040 (2019) ..................................................22

*Loux v. Rhay,*
    375 F.2d 55 (9th Cir. 1967)......................................................................9

*M&Z Trading Corp. v. Cargolift Ltd.,*
    2000 U.S. App. LEXIS 11573 (9th Cir. 2000) .......................................9

*McWright v. Alexander,*
    982 F.2d 222 (7th Cir. 1992)..................................................................10

*Molina Healthcare of Cal., Inc. v. United States,*
    133 Fed. Cl. 14 (2017) ..............................................................................1

*O.S.T. v. Regence BlueShield,*
    181 Wn.2d 691, 335 P.3d 416 (2014) ....................................................18

*Pac. Shores Props. v. City of Newport Beach,* 730 F.3d 1142 (9th Cir.
    2013)................................................................................................10, 12

*PAE Gov't Servs. v. MPRI, Inc.,*
    514 F.3d 856 (9th Cir. 2007)....................................................................8

*Payan v. L.A. Cmty. Coll. Dist.,*
    11 F.4th 729 (9th Cir. 2021) ..................................................................14

*Schmitt v. Kaiser Health Plan of Washington,*
    965 F.3d 945 (9th Cir. 2020)............................................................ passim

*Sumes v. Andres,*
    938 F. Supp. 9 (D.D.C. 1996) ................................................................18

*T.S. v. Heart,* 2021 U.S. Dist. LEXIS 49119, *20–27 (S.D. Ind., March
    16, 2021)....................................................................................................1

*Taylor v. Burlington N. R.R. Holdings, Inc.,*
    193 Wn.2d 611, 444 P.3d 606 (2019) ....................................................23

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – iii
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

*Updike v. Multnomah Cty.*,
  870 F.3d 939 (9th Cir. 2017).................................................................21

*Woolfolk v. Duncan*,
  872 F. Supp. 1381 (E.D. Pa. 1995) ........................................................18

## STATUTES

29 U.S.C. §705(20)(B) ...........................................................................4, 9

42 U.S.C. §12102 ......................................................................................24

42 U.S.C. §12102(2) ...................................................................................9

42 U.S.C. §18022(b)(1)(G).......................................................................15

42 U.S.C. §18116 ..................................................................................1, 4

RCW 48.30.300(2) ......................................................................................2

RCW 48.43.0128.............................................................................. passim

RCW 48.43.0128(1) ..................................................................................21

RCW 48.43.715..........................................................................................18

RCW 49.60.010 ..........................................................................................22

RCW 49.60.020 ..........................................................................................22

RCW 49.60.030............................................................................................2

RCW 49.60.030(1) ....................................................................................23

RCW 49.60.030(1)(e) ................................................................................22

RCW 49.60.030(2) ..............................................................................22, 23

RCW 49.60.040(7)(a) ................................................................................23

RCW 49.60.040(7)(c)(i) ............................................................................23

RCW 49.60.178............................................................................................23

RCW 49.60.178(1) ...............................................................................21, 22

## REGULATIONS

45 C.F.R. §146.121(b)(2)(i)(B) ................................................................15

45 C.F.R. §156.115(a)(5) ..........................................................................15

45 C.F.R. §92.4 ............................................................................................4

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – iv
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**LEGISLATIVE HISTORY**

2 SSB 5313, Sec. 1.............................................................................................21

SHB 1870 (2019)...............................................................................................23

**OTHER AUTHORITIES**

81 Fed. Reg. 31405............................................................................................19

81 Fed. Reg. 31408............................................................................................19

81 Fed. Reg. 31409............................................................................................19

81 Fed. Reg. 31434............................................................................................19

https://blue.regence.com/trgmedpol/intro/index.html................................19

https://lawfilesext.leg.wa.gov/biennium/2019-
    20/Pdf/Bill%20Reports/House/1870-
    S%20HBR%20FBR%2019.pdf?q=20220526125620.......................22

https://www.cms.gov/CCIIO/Resources/Regulations-and-
    Guidance/Downloads/Final-2018-Letter-to-Issuers-in-the-
    Federally-facilitated-marketplaces-and-February-17-
    Addendum.pdf .......................................................................................19

https://www.hhs.gov/civil-rights/for-individuals/section-
    1557/1557faqs/index.html.....................................................................19

Wallhagen, Margaret I., Ph.D., GNP-BC, AGSF, FAAN, "The Stigma
    of Hearing Loss," The Gerontologist, Vol. 50, No. 1, Feb. 2010,
    pp. 66-75 ....................................................................................................9

www.ncbi.nlm.nih.gov/pmc/articles/PMC2904535/pdf/gnp107.p
    df ...............................................................................................................9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

## I.  INTRODUCTION

Before the Affordable Care Act, health insurers were free to discriminate against the disabled. Insurers could refuse to issue plans to individuals with disabilities and were permitted to design benefits that denied services to the disabled. The ACA changed everything. For the first time, all Americans, including those with disabilities, would have access to comprehensive coverage. It was a "tectonic shift in the nation's [health] insurance market." *Molina Healthcare v. United States,* 133 Fed. Cl. 14, 19 (2017).

To ensure comprehensive coverage, the ACA eliminated pre-existing condition exclusions and medical underwriting. In addition, and at issue here, it also prohibited discriminatory benefit designs. 42 U.S.C. §18116 ("Section 1557"); *Schmitt v. Kaiser Health Plan of Washington*, 965 F.3d 945, 949 (9th Cir. 2020). In the years since the ACA was enacted, federal courts have grappled with the scope and meaning of Section 1557. The emerging body of case law—of which *Schmitt* was one of the first—has uniformly concluded that Section 1557 means exactly what it says:  a health plan cannot design benefits that discriminate against the disabled. *See, e.g., Schmitt*, 965 F.3d at 954–58; *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204 (9th Cir. 2020); *C.P. v Blue Cross Blue Shield of Ill.*, 536 F. Supp. 3d 791 (W.D. Wash. 2021) (sex discrimination claim based on benefit design properly pled under Section 1557); *T.S. v. Heart*, 2021 U.S. Dist. LEXIS 49119, *20–27 (S.D. Ind., March 16, 2021) (plaintiff properly pled claim under ACA for benefit design that excluded treatment for autism); *Fuog v. CVS Pharm.*, 2022 U.S. Dist. LEXIS 84045, *14 (D. R.I., May 10, 2022) (plaintiff properly pled both disparate treatment proxy claim and disparate impact claims under Section 1557 arising out of benefit design).[1]

---

[1] In *Fuog,* as here, the plaintiffs required several amended complaints in order to fashion their claims narrowly to meet the rapidly evolving case law governing Section 1557. *See id.,* 2022 U.S. Dist. LEXIS 84045, at *17, n.7 (the *Fuog* plaintiffs amended their complaint to establish a narrower class with a "significantly tighter correlation with disability").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 1
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Washington State has imposed further protections. Since this case was originally filed, the Washington Legislature has specifically deemed discrimination in benefit design to be "unfair discrimination" such that it gives rise to an action under Washington's Law Against Discrimination ("WLAD") and Consumer Protection Act ("CPA"). *See* RCW 48.43.0128; RCW 48.30.300(2); RCW 49.60.030.

Against this fluid backdrop, the Plaintiffs here have amended their Complaint to address the concerns identified by the Court in its January 2022 Order. Dkt. No. 41.

***First***, in the Second Amended Complaint ("SAC"), the Plaintiffs have narrowed their claims (and their class) to address a very specific exclusion: the exclusion of hearing aids. *Compare* Dkt. No. 32, ¶¶3, 14, 15, 22, 23, 96 (claims premised on the exclusions for all treatment associated with hearing loss) *with* Dkt. No. 42, ¶¶1, 2, 8, 9, 16, 19, 20, 23, 43, 48, 60, 61, 64, 65, 74, 81, 89 (claims narrowed to the exclusion of hearing aids only). While Plaintiffs remain concerned that the broader exclusion of other hearing-loss related services is also discriminatory, they have elected to only pursue a claim that Regence's exclusion of hearing aids violates both Section 1557 and Washington State Law. This narrowed claim is supported by Frank Lin, M.D., Ph.D., the author of, "Prevalence of Hearing Loss by Severity in the United States," and permits conclusions on the proxy's "fit." Dkt. No. 42, ¶¶84–87 (Dr. Lin's analysis); Dkt. No. 41, p. 14 (Court's use of Dr. Lin's study). These are not just Plaintiffs' allegations but evidence-based conclusions from one of the leading experts in the field.

***Second***, the SAC alleges that Regence pays for hearing screenings as part of physical examinations as well as diagnostic hearing examinations. Dkt. No. 42, ¶¶68–73. This information was recently uncovered. Spoonemore Decl., ¶2. This is significant given that both hearing screenings and diagnostic hearing examinations are administered to the hearing-disabled and non-disabled alike. Yet, once an individual is found to have significant hearing loss—the vast majority of whom are, by definition, hearing-disabled

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 2
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

—*Regence then excludes the very service required to treat their disability:  hearing aids*. The specific exclusion of hearing aids is a clear-cut proxy for discrimination against hearing disabled insureds.

*Third*, the SAC alleges, for the first time, that Regence's exclusion of hearing aids gives rise to a disparate impact claim. A disparate impact claim under Section 1557 was expressly authorized in *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020), and fits this case to a "T." No proxy analysis is required. Rather, the question is whether the exclusion "would disproportionately affect people with disabilities." *Id*. at 1210 (*citing Alexander v. Choate*, 469 U.S. 287, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985)). The touchstone is whether hearing disabled insureds have "meaningful access" to the benefits promised by the ACA, including the rehabilitative and habilitative devices that they require. Given Regence's exclusion of hearing aids, they do not. *See id*. at 1211–12.

*Fourth*, Plaintiffs add a claim for intentional/deliberate indifference discrimination. There is no medical or scientific basis to exclude hearing aids from medical coverage. The sole reason that the service is denied is to arbitrarily avoid paying claims to individuals that are disabled. This is the hallmark of discrimination.

*Fifth*, the SAC alleges claims under the WLAD and CPA. These claims are predicated upon RCW 48.43.0128, which makes it illegal to discriminate against disabled insureds in the design of health benefits. This statute can be enforced through both the WLAD and CPA and includes claims for declaratory and injunctive relief.

The ACA and Washington law promised insureds with disabilities—including those with disabling hearing loss—that they would no longer be subject to the historic discrimination that plagued health insurance policies before the ACA. Regence's exclusion of hearing aids, the treatment that the vast majority of the hearing disabled need to fully engage in life's activities, violates the very *raison d'être* of the ACA's anti-discrimination requirements. Regence's motion to dismiss should be denied.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 3
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

## II.   FACTS

### A.   Procedural History.

In this action, two Regence insureds with hearing loss challenge Regence's exclusion of coverage for hearing aids except for treatment related to cochlear implants. The case was originally filed on October 30, 2017. The Court dismissed the original Complaint (*see* Dkt. No. 22), and Plaintiffs appealed to the Ninth Circuit Court of Appeals. Dkt. No. 24. The Ninth Circuit concluded that insurers like Regence may be liable for discriminatory benefit design and reversed and remanded this case and its sister litigation. *See* Dkt. No. 29. Upon remand, Plaintiffs amended the Complaint consistent with the directions of the Ninth Circuit. *See* Dkt. No. 32. Regence again moved to dismiss. Dkt. No. 37. The Court granted Regence's Second Motion to Dismiss but concluded that "Plaintiffs' complaint may be cured 'by the allegation of other facts'" and granted leave to amend the complaint. Dkt. No. 41, p. 17. On February 22, 2022, Plaintiffs filed their SAC, hewing closely to the guidance provided by this Court and the Ninth Circuit. *See* Dkt. No. 42. Regence again moves to dismiss.

### B.   The SAC More Than Adequately Pleads Facts Sufficient to Support Claims.

The SAC sets forth all the facts necessary for relief:

- Plaintiffs E.S. and Sternoff are enrolled in a Regence BlueShield insured plan. Dkt. No. 42, ¶¶8–9, 18, 36, 40.

- Plaintiffs are qualified individuals with a disability, whose hearing loss limits a major life activity, hearing. *Id.*, ¶¶8–9, 18, 42; 29 U.S.C. §705(20)(B).

- Plaintiffs require hearing aids to treat their hearing loss. Dkt. No. 42, ¶¶8–9, 18, 43.

- Plaintiffs' Regence insured health plan is a "health program or activity", part of which receives federal financial assistance. *Id.*, ¶10; 42 U.S.C. §18116; 45 C.F.R. §92.4. As a result, Regence is a "covered entity" and must comply with Section 1557, 42 U.S.C. §18116.

- Regence administers health plans that exclude coverage of hearing aids. *Id.*, ¶¶2, 18, 20, 23.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 4
[Case No. 2:17-cv-1609-RAJ]

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

- Regence provides coverage for cochlear implants, a medical device that is not an amplified hearing aid. *Id.* ¶¶32–33. Cochlear implants meet the needs of only a tiny minority of its insureds who require hearing aids, approximately 5.5% of hearing disabled insureds. *Id.*, ¶¶77.

- Regence ***covers*** diagnostic evaluations for hearing loss, the service typically relied upon by non-disabled insureds with hearing loss. *Id.*, ¶62. This allegation is not merely hypothetical. Diagnostic testing and evaluation are covered under the Regence plan to determine whether cochlear implants may be appropriate. *See* Dkt. No. 32–1, p. 51 of 91. Plaintiff E.S.'s diagnostic evaluation for hearing loss was covered by Regence. Spoonemore Decl., ¶¶2–3, *Exhs. A–D.*

- Plaintiffs alleged, in step-by-step detail, how Regence's Hearing Aid Exclusion is a proxy for discrimination against insureds with disabling hearing loss. *Id.*, ¶¶60–87.

- Plaintiffs also alleged, in detail, that Regence's Hearing Aid Exclusion has a disparate impact on hearing disabled insureds. *Id.*, ¶¶88–92.

- Plaintiffs further alleged that Regence intentionally discriminates against hearing disabled insureds when administering its Hearing Aid Exclusion. *Id.*, ¶¶93–99.

- Plaintiffs also alleged that Regence's Hearing Aid Exclusion violates the WLAD and CPA. *Id.*, ¶¶100–108.

- Any submission of a claim or appeal would have been futile. *Id.*, ¶49. Nonetheless, E.S. pursued her administrative appeal rights under her Regence plan, to no avail. *Id.*

## C.   Regence's Exclusion of Hearing Aids.

The SAC alleges that Regence designed, marketed, and administered a standard exclusion that eliminated all coverage of hearing aids:

**SPECIFIC EXCLUSIONS**
…

**Hearing Aids and Other Hearing Devices**

Hearing aids (externally worn or surgically implanted) and other hearing devices are excluded. This exclusion does not apply to cochlear implants.

*See* Dkt. No. 32–1, pp. 50–52 of 91. Regence imposed this Exclusion without conducting the usual medical necessity analysis associated with excluded treatment and technology.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 5
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Dkt. No. 42, ¶¶93–99. Indeed, there is no "scientific or medical reason" to justify Regence's Exclusion. *Id.*, ¶97. Regence's intentional decision to exclude hearing aids from coverage was discriminatory, arising out of a historical and prejudicial belief that covering the medical needs of hearing disabled insureds is not an appropriate use of the insurer's funds. *Id.*, ¶98.

## III.   ARGUMENT

**A.     Plaintiffs Adequately Alleged Disability Discrimination Under Section 1557.**

Under Section 1557, Plaintiffs must allege the following:  (1) they are individuals with disabilities, in this case disabling hearing loss; (2) they are otherwise qualified to receive the benefit in dispute (coverage for hearing aids); (3) they were/are denied the benefit by reason of their disability; and (4) Regence is a covered entity that receives federal financial assistance. *See Schmitt,* 965 F.3d at 954. Regence moves to dismiss, claiming that the third requirement was not adequately pled. *See generally* Dkt. No. 45.

Plaintiffs have properly pled disability discrimination in at least three independent ways:  (1) Regence's Hearing Aid Exclusion is a form of proxy discrimination; (2) the Hearing Aid Exclusion has disparate impact on the disabled; and (3) the Hearing Aid Exclusion is the result of discriminatory practices and procedures utilized by Regence that were not applied to other medical benefits.

### 1.     The Hearing Aid Exclusion is a form of proxy discrimination.

Proxy discrimination exists where "the needs of hearing disabled persons differ from the needs of persons whose hearing is merely impaired such that the exclusion is likely to predominately affect disabled persons." *Schmitt*, 965 F.3d at 959, n.8. As more detailed in the SAC, (1) the needs of the non-disabled are met under Regence's policy because hearing screenings and diagnostic hearing evaluations, the only services required by the non-hearing disabled, are covered by Regence, while (2) hearing aids,

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 6
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

the benefit required by the vast majority of Regence's hearing disabled, are excluded. The needs of hearing disabled persons therefore differ significantly from the needs of persons whose hearing is merely impaired but not disabling. Regence's exclusion discriminates against hearing disabled insureds based upon their disability.

### a. *Regence meets the needs of its non-disabled insureds by covering hearing screenings and diagnostic evaluations.*

Regence insureds who do not require hearing aids are provided with covered hearing-related services under Regence's policies. Hearing screenings, examinations, and diagnostic testing are the primary tools to determine if hearing loss has occurred and the extent and nature of any such loss. Hearing screenings are generally "pass/fail" tests. If the test is "failed" then the patient is referred for a diagnostic evaluation. Dkt. No. 42, ¶¶66–67. Regence provides coverage for these services, ensuring that its non-disabled insureds have access to the full array of hearing-related services that they need.

Regence provides coverage for screening examinations. These screening examinations are part of a bundled service included in a covered physical examination. Dkt. No. 42, ¶68; Dkt. No. 32–1, p. 26 of 91 (Regence provides full coverage for a physical examination). As the SAC alleges, in a physical examination, the physical structures of the ear are examined, as are certain tests (including, but not limited to, the tuning fork test, scratch test, whispered voice test, and/or use of a handheld audiometric device). Dkt. No. 42, ¶68(b).[2] As a result, Regence's insureds with no hearing loss, or hearing loss that is not disabling, are provided with hearing screenings as part of a physical examination that is covered in full by Regence. Dkt. No. 42, ¶68(d).

---

[2] Regence asks the Court to accept its merits-based argument that a physical does not include any evaluation of the ability to hear. This is wholly improper on a motion to dismiss. Indeed, the SAC explains that the Center for Medicare Services, for example, requires such an assessment. Dkt. No. 42, ¶68(c). Likewise, the NIH directs that a physical exam includes "examin[ing] the pinnae and periauricular tissues, test auditory acuity, perform Weber and Rinne maneuvers … observe the auditory canals and tympani." *Id.*, ¶68(c). These allegations must be accepted as true at this stage of the litigation.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 7
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

If the physical exam identifies a potential hearing-related issue, then Regence provides coverage for diagnostic hearing examinations. A diagnostic hearing test is not a "routine hearing examination" under Regence's policies. Dkt. No. 42, ¶71. Nor is a diagnostic hearing test a "hearing aid" excluded under the 2020 policy exclusion, or a "program or treatment for hearing loss" excluded under the pre-2020 policies. Dkt. No. 42, ¶71. Rather, it is a "diagnostic procedure" that is specifically covered under Regence's policies. Dkt. No. 32–1, p. 27 of 91. Not only does Regence provide such coverage under the plain terms of its policies, *in actual practice*, it covers diagnostic hearing evaluations. *See* Spoonemore Decl., ¶¶2–3, *Exhs. A–D*.

In short, Regence's non-disabled insureds have coverage for all of the hearing-related medical needs that they might require:  screening for hearing loss (as part of a physical examination) and then follow-up diagnostic testing to determine the nature and extent of any hearing-related problem. This coverage, however, does not come close to meeting the needs of hearing disabled insureds.

Regence complains that the allegation that Regence provides coverage for screening and diagnostic testing for hearing loss is a change since this case was first filed in 2017, nearly five years ago. Dkt. No. 45, p.11. That is correct but irrelevant. Plaintiffs often modify their legal theory and facts during the course of litigation based upon formal and informal discovery. *PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("…[W]e allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside…. The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations."). Since this case was filed, Plaintiffs learned that Regence, in fact, covered E.S.'s diagnostic hearing evaluation. Spoonemore Decl. ¶2. Plaintiffs further confirmed Regence's practice by

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT – 8
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

calling various providers. *Id.*, ¶2. With this information, and in consultation with their anticipated expert, Dr. Frank Lin, Plaintiffs found that such diagnostic evaluations are generally covered by health plans, even those with "hearing screening" exclusions. *Id.*, ¶3. The SAC reflects this new evidence and is the controlling document, completely superseding all other complaints. *See M&Z Trading Corp. v. Cargolift Ltd.,* 2000 U.S. App. LEXIS 11573, *5 (9th Cir. 2000) (doctrine of judicial estoppel does not apply to amended complaints); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent.").

### b.    Disabled insureds who require hearing aids are targeted.

It is easy to infer that "[d]iscriminating against people who require hearing aids is a proxy for discrimination against people who have disabling hearing loss." Dkt. No. 42, ¶60. It is also plausible to assert that the Hearing Aid Exclusion affects predominantly hearing disabled insureds. Data supports both allegations. The vast majority of insureds who need hearing aids have a disability, as that term is used in the ACA and under Section 504 of the Rehabilitation Act, namely, an impairment that "limits a major life activity of such individual." Dkt. No. 42, ¶¶80–87. Roughly 75% of individuals who use hearing aids acknowledge that they have meaningful difficulties hearing without their hearing aids. Dkt. No. 42, ¶86 (citing data and studies from Frank Lin, M.D.). "Hearing" is a specifically enumerated "major life activity." 29 U.S.C. §705(20)(B); 42 U.S.C. §12102(2). The 75% figure is the ***floor***—many in the other 25% of hearing-aid users may still meet the legal definition of "disability" if they use hearing aids because they experience significant limitations to their major life activities.[3] *Id.*

---

[3] That people use hearing aids only when their life activities are impacted is a plausible assumption because hearing-aid use is highly stigmatized. *See* Wallhagen, Margaret I., Ph.D., GNP-BC, AGSF, FAAN, "The Stigma of Hearing Loss," The Gerontologist, Vol. 50, No. 1, Feb. 2010, pp. 66-75 ("[S]tigma is an important underlying factor in the denial of hearing loss and rejection of hearing assessment and treatment"); *see* www.ncbi.nlm.nih.gov/pmc/articles/PMC2904535/pdf/gnp107.pdf (last visited 5/25/22). People do not wear hearing aids unless they need them to address a significant deficit.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 9
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Like "gray hair" as a proxy for age, the "fit" of hearing-aid use to disability is over 75%, close enough to be a plausible proxy for that disability, particularly at the pleadings stage. *See Pac. Shores Props. v. City of Newport Beach,* 730 F.3d 1142, 1160, n.23 (9th Cir. 2013), *citing to McWright v. Alexander,* 982 F.2d 222, 228 (7th Cir. 1992). The mere fact that the Exclusion is "over-inclusive" by affecting some non-disabled insureds with hearing loss does not defeat the discrimination claim.[4] As the Ninth Circuit instructs, proxy discrimination exists where "the needs of hearing disabled persons ***differ*** from the needs of persons whose hearing is merely impaired such that the exclusion is likely to predominately affect disabled persons." *Schmitt,* 965 F.3d at 959 (emphasis added). Here, the needs of hearing-***disabled*** individuals significantly differ from the needs of hearing-***impaired*** individuals ***in that only the former have experienced limitations to their major life activities that require hearing aids to fix that deficit***.

At the same time, only a tiny percentage—approximately 5.5%—of the population with hearing loss can have their needs met by Regence's coverage of cochlear implants. Dkt. No. 42, ¶77. And it is important to recognize that hearing-aid users and cochlear implant users are not discrete populations. Cochlear implants are available only for individuals who gain no significant benefit from hearing aids, and the vast majority of implant users previously used hearing aids. For more than 80% of the hearing disabled, the appropriate treatment for their hearing loss is not a cochlear implant but a hearing aid, which Regence wholly excludes. *See* Dkt. No. 42, ¶78; Dkt. No. 41, p. 16 ("[B]ecause it appears that only a small proportion of the hearing loss population would be served

---

[4] That Regence located a handful of cases in which individuals with hearing aids had not adequately pled their ADA claims is irrelevant. *See* Dkt. No. 45, p. 13. Plaintiffs admit that a small minority of hearing aid users are non-disabled under federal law (although they are disabled under Washington law). *See* Dkt. No. 42, ¶¶86(c), 87. But that does not mean that Regence's hearing aid exclusion cannot be a form of disability discrimination. *See Pac. Shores,* 730 F.3d at 1159 ("A willingness to inflict collateral damage by harming some, or even all, individuals from a favored group in order to successfully harm members of a disfavored class does not cleanse the taint of discrimination; it simply underscores the depth of the defendant's animus.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 10
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

by Regence's policy, this would support a claim of proxy discrimination"). As another

federal district court recently concluded:

> The closeness of the fit is a fact-sensitive determination that will require reliable expert testimony. For now, however, Plaintiff's pleading is adequate to find it plausible that a sufficient fit exists to draw the discriminatory inference. That is enough at this early stage.

*Fuog,* U.S. Dist. LEXIS 84045, at *14. Plaintiffs here have alleged far more than is

necessary at this stage. *Schmitt,* 965 F.3d at 959, n.8 ("At the pleadings stage, we do not

require a plaintiff to allege enough detail to state a *prima facie* case of discrimination").

### c. *Regence's exclusion of routine hearing examinations does not destroy the "fit."*

Regence attempts to broaden the challenged exclusion in Plaintiffs' SAC to

include its exclusion of "routine hearing examinations." *See* Dkt. No. 45, p. 1, lines 21–23

(suggesting that the Hearing Aid Exclusion is only part of the actual Exclusion); p. 8:19–

22. Regence's claim is belied by its policy. Since at least 2020 (and perhaps earlier),

Regence excluded hearing aids as a separate, specific exclusion. *See* Dkt. No. 32–1,

pp. 50–52 of 91. Regence cannot manufacture overbreadth by misrepresenting the plain

language of its own policies, or by recasting Plaintiffs' SAC into something that it is not.[5]

Regence also argues that Plaintiffs' allegation that it covers diagnostic hearing

evaluations is "unsupported" by the plain language of the Regence plan.[6] Dkt. No. 45,

pp. 1–2. This is also untrue. Regence covers all diagnostic examinations to determine

---

[5] Whether Regence's prior "Hearing Loss Exclusion" (which combined the exclusion for hearing aids, with the exclusion for routine hearing examinations into a single, disability-based exclusion) was targeted primarily at excluding hearing aids for hearing disabled enrollees cannot be determined without discovery. *See Carr v. United Healthcare Servs.,* 2016 U.S. Dist. LEXIS 182561, at *7 (W.D. Wash. May 31, 2016). At this point, the SAC only challenges the exclusion of hearing aids as discriminatory.

[6] Importantly, while Regence complains that about the "lack of support" in the sources for Plaintiffs' allegations regarding its coverage of hearing screenings in primary care visits and diagnostic hearing examinations, ***Regence never actually disputes their truth.*** *See* Dkt. No. 45, pp. 9-11. Regence does not because it cannot. *See* Spoonemore Decl., ¶¶2-3, *Exhs. A-D.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 11
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

whether a cochlear implant (which is covered) is appropriate or inappropriate, which necessarily includes whether hearing aids would better serve the enrollee. *See* Dkt. No. 32–1, pp. 50–52 of 91. These diagnostic evaluations were covered for Plaintiff E.S.[7] *See* Spoonemore Decl., ¶2, *Exhs. A–D.* And as alleged by Plaintiffs, diagnostic and hearing evaluations are routinely provided, and covered, by outpatient primary care annual examinations.[8] Dkt. No. 42, ¶¶66–73. To the extent there is a material dispute over whether Regence covers diagnostic hearing examinations, that dispute can only be resolved on the merits. *Carr v. United Healthcare Servs.*, 2016 U.S. Dist. LEXIS 182561, at *7 (W.D. Wash. May 31, 2016); *see also D.T. v. NECA/IBEW Family Med. Care Plan*, 2017 U.S. Dist. LEXIS 195186, at *6 (W.D. Wash., Nov. 28, 2017).

Regence argues that Plaintiffs have not demonstrated a "close enough fit" with their allegations, claiming that at the pleading stage, they must demonstrate that hearing aids are "almost exclusively indicators" of disability. Dkt. No. 45, p. 7. Not so. Every case relied upon by Regence for this proposition was decided on the merits, not at the pleading stage. *See id., citing to Pac. Shores*, 730 F.3d at 1159; *Davis v. Guam*, 932 F.3d 822, 829 (9th Cir. 2019). And no case stands for the proposition that, at the pleading stage, the "fit" between those subjected to a proxy exclusion and those with the protected status must be closer than the 75% "fit" that Regence essentially concedes.[9] Critically, the Ninth Circuit held in this case that plaintiffs must merely show that the proxy exclusion

---

[7]Given that "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [of the complaint]," *see Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984), Plaintiffs proffer the "hypothetical"—which certainly appears be true—that Regence actually paid for the diagnostic hearing evaluation for E.S.

[8] Regence argues that despite Plaintiffs' allegations, there is a distinction between a "routine physical examination" and a "specific, though routine hearing examination." Dkt. No. 45, p. 16. None of these terms are defined in the Regence plan, and Regence purposefully avoids discussing whether it covers ***diagnostic*** hearing examinations in its motion. Ultimately, discovery is required to determine whether, and precisely how, Regence covers or excludes diagnostic hearing tests.

[9]As discussed in §III.A.1.b *above*, the "fit" is likely considerably closer when applying the ACA definition of "disability."

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 12
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

"primarily" or "predominantly" impacts insureds with disabilities. *Schmitt,* 965 F.3d at 959. The Ninth Circuit was most concerned that Plaintiffs did not include in their original Complaint allegations that cochlear implants meet the needs of only a small fraction of hearing disabled insureds. *Id.* at 949 ("[A] categorical exclusion of treatment for hearing loss would raise an inference of discrimination against hearing disabled people ***notwithstanding that it would also adversely affect individuals with non-disabling hearing loss***."). Here, Regence imposes an exclusion of all coverage for hearing aids, the key treatment needed by the vast majority of hearing-disabled insureds to address their disability. That sufficiently raises an inference of discrimination.

Regence misleadingly argues that even if it does cover diagnostic hearing examinations, that coverage does not "create an inference of discriminatory intent" against disabled insureds. Dkt. No. 45, p. 10. Regence has it backwards. Its coverage of diagnostic services for disabled and non-disabled insureds is not discriminatory. ***It is Regence's blanket exclusion of all coverage for hearing aids, the critical service required by hearing disabled insureds, that creates the inference of discriminatory intent***. As the Ninth Circuit concluded in *Schmitt,* the ACA "imposes an affirmative obligation not to discriminate in the provision of health care—in particular, ***to consider the needs of disabled people and not design plan benefits in ways that discriminate against them***." *Id.,* 965 F.3d at 955 (emphasis added). Regence's Hearing Aid Exclusion denies hearing disabled insureds access to the ACA-mandated benefit that would ameliorate their disability, while serving the coverage needs of those without a hearing disability. To intentionally and arbitrarily exclude hearing aids from coverage is the very essence of disability discrimination in benefit design.

Ultimately, Regence demands too much from the SAC at this stage of litigation. Plaintiffs are not obligated to plead more specific facts than they have in their possession, particularly where, as here, such information is within the exclusive control of

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 13
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

defendants. *See A.Z. v. Regence BlueShield*, 333 F. Supp. 3d 1069, 1081 (W.D. Wash. 2018); *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 728 (5th Cir. 2018). Specifically, Regence exclusively controls evidence about (1) how it administers its coverage of diagnostic services, including as it relates to cochlear implants; (2) the reasons it established the Hearing Aid Exclusion, if any; and (3) whether the Regence insureds who are denied coverage for hearing aids are primarily hearing-disabled. Nonetheless, Plaintiffs have pled specific allegations of discrimination based upon the experience of Plaintiffs, its expert witness, and general standards of care and coverage. Plaintiffs' allegations are more than sufficient to give "defendants fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

### 2.     Plaintiffs properly assert a disparate impact discrimination claim.

The Ninth Circuit recently addressed the required allegations to support a claim for disparate impact discrimination based on disability to proceed under Section 1557. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020). Consistent with the Supreme Court's decision in *Alexander v. Choate,* the Ninth Circuit directed courts considering such claims to conduct the following analysis:   (1) consider the nature of the benefit alleged to have been denied; (2) determine whether the existing coverage provided "meaningful access to the benefit" consistent with the Affordable Care Act and its regulations; and (3) evaluate whether the limitation or exclusion impacts disabled enrollees "in a unique or severe manner." *Doe,* 982 F.3d at 1210–12. This analysis must be construed in the light most favorable to the Plaintiffs. *Id. See also Payan v. L.A. Cmty. Coll. Dist.,* 11 F.4th 729, 738 (9th Cir. 2021) ("Prohibited forms of disability discrimination include … providing the entity's program or service in a way that is not effective in affording the individual with a disability an equal opportunity to obtain the same result

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 14
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

as provided to others."). Plaintiffs here allege a straightforward claim of disparate impact discrimination under Section 1557.

*First,* as alleged in the SAC, the "benefit denied" is access to coverage for hearing aids. As alleged and demonstrated by Plaintiffs, diagnostic hearing evaluations are covered by Regence. Dkt. No 42, ¶¶66–73; Spoonemore Decl., ¶¶2–3, *Exhs. A–D.* Plaintiffs no longer challenge Regence's exclusion of "routine hearing examinations" in the Plaintiffs' SAC, since they can access coverage for diagnostic evaluations, and hearing screening is available in a covered in a physical examination (as well as free of charge in community-based programs). Dkt. No. 42, ¶69.

Instead, under the SAC, the challenged benefit is ***coverage of hearing aids.*** Under the ACA statute and regulations, health insurers are required to cover medically necessary durable medical equipment and prosthetics. 42 U.S.C. §18022(b)(1)(G) ("Rehabilitative and habilitative services and devices" must be covered); 45 C.F.R. §156.115(a)(5) (Coverage of "habilitative services and devices" must include "services and devices that help a person keep, learn, or improve skills and functioning for daily living … including … ***for people with disabilities***"). Despite this coverage mandate, hearing disabled insureds are denied meaningful access to hearing aids, since only a tiny percentage of hearing disabled insureds can benefit from Regence's coverage of cochlear implants. Plaintiffs and the proposed class cannot receive effective treatment under this ACA benefit because of their disability. *See Doe,* 982 F.3d at 1211.

The federal regulations promulgated to implement Section 1557 support this conclusion. As the Ninth Circuit noted in *Doe*:

> The ACA regulations require that "any restriction on a benefit or benefits must apply uniformly to all similarly situated individuals," and must "not be directed at individual participants or beneficiaries based on [disability]." 45 C.F.R. §146.121(b)(2)(i)(B). … Does allege the structure and implementation of the Program discriminates against them on the basis of their disability by preventing HIV/AIDS patients from obtaining the same

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 15
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

quality of pharmaceutical care that non-HIV/AIDS patients may obtain in filling non-specialty prescriptions, thereby denying them meaningful access to their prescription drug benefit. Those allegations are sufficient to state an ACA disability discrimination claim.

*Id.* Similarly here, Plaintiffs allege that Regence's Hearing Aid Exclusion discriminates against them on the basis of disability by denying them access to the essential medical equipment that would address and ameliorate their disability, while non-disabled insureds are able to have their needs for durable medical devices and prosthetics met. Dkt. No. 42, ¶¶88–92. Hearing aids function in this context like a wheelchair for a physically disabled individual. *See Fuog,* 2022 U.S. Dist. LEXIS 84045, at *14. Hearing aids are the key medical equipment that Plaintiffs require in order to benefit from the ACA's coverage guarantee related to rehabilitative and habilitative devices.

**Second,** Regence's existing coverage—which covers only cochlear implants—does not provide "meaningful access" to habilitative and rehabilitative devices for the vast majority of hearing disabled individuals. Dkt. No. 42, ¶¶77–78. Plaintiffs' allegation that only 5.5% of disabled insureds with hearing loss have their needs met with Regence's cochlear implant coverage demonstrates the lack of meaningful access. *Id.,* ¶77.

**Third,** the lack of access to medically necessary hearing aids uniquely impacts Plaintiffs and the proposed class in a profound and devastating manner. By definition, they require hearing aids to engage in major life activities, including working, going to school, socializing, or simply communicating. *Id.,* ¶¶61, 65, 75. These needs go unmet due directly to Regence's Hearing Aid Exclusion. In contrast, non-disabled insureds are only minimally impacted by Regence's Exclusion. *Id.,* ¶76. They can work, socialize, go to school, or otherwise interact with others without significant interference from their untreated medical condition.

Contrary to Regence's claims (Dkt. No. 45, p. 17), the original and First Amended Complaints did not allege disparate impact discrimination. *See* Dkt. Nos. 1, 32. Neither

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 16
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

this Court nor the Ninth Circuit addressed disparate impact previously in this case or in its sister case, *Schmitt*. *See* Dkt. No. 26; *Schmitt,* 965 F.3d 954 (refraining from disparate impact analysis because Plaintiffs "***did not allege a disparate impact claim***") (emphasis added).

Also misleadingly, Regence repeats arguments it previously made (and lost in the Ninth Circuit) regarding *facial* discrimination, now applying them to Plaintiffs' ***disparate impact*** claim. *Compare* Dkt. No. 45, pp. 15–17 *with* Dkt. No. 11, pp. 10–16. Regence argues that since it offers the same coverage to all insureds, hearing disabled and non-disabled alike, it does not matter that the Hearing Aid Exclusion has a disparate impact on the hearing disabled. Dkt. No. 45, pp. 16–17. ***The Ninth Circuit in Schmitt and Doe rejected Regence's argument.*** *See Schmitt,* 965 F.3d at 951; *Doe,* 982 F.3d at 1211 ("The fact that the benefit is facially neutral does not dispose of a disparate impact claim based on lack of meaningful access"). Specifically, in *Doe,* the Ninth Circuit concluded that the plaintiffs adequately alleged they were denied "meaningful access" to the ACA's prescription drug benefit because the insurer's barriers to coverage of prescription medications prevented plaintiffs from receiving effective treatment for their disability. *Id.* at 1212. *See also Fuog,* 2022 U.S. Dist. LEXIS 84045 at *16–17. The same is true here.

Regence claims that since Washington's benchmark plan required coverage of cochlear implants and permits it to exclude other treatment for hearing loss, it cannot be held liable for disability discrimination when it excludes all other coverage. Dkt. No. 45, p. 21.[10] Again, the Ninth Circuit rejected this argument. *See Schmitt,* 965 F.3d at 955. The benchmark plan "is only the starting point" for determining ACA compliance, including with Section 1557's non-discrimination requirements. *Id.* The Court held that

---

[10] Regence implies that since Medicare does not cover hearing aids, it is not required to do so either. Dkt. No. 45, p. 9. No court has concluded—yet—that Medicare is a "health program or activity" that is subject to Section 1557. *See Fain v. Crouch,* 545 F. Supp. 3d 338, 342 n.3 (S.D. W. Va. 2021) (discussing, in *dicta,* that Medicare insurers may be subject to Section 1557).

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 17
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

"compliance with federal and state law regarding essential health benefits did not guarantee compliance with the ACA's nondiscrimination requirement." *Id.* at 956. The fact that Regence's plan complied with the benchmark, or was not disapproved by the Insurance Commissioner, is irrelevant.[11] *Id.* at 956–57 ("[W]hether or not [defendants] complied with section 1557 is a question of federal law on which we owe the state no deference."); *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 700, n.9, 335 P.3d 416 (2014).

### 3.   Deliberate indifference discrimination based upon Regence's arbitrary exclusion of hearing aids.

Plaintiffs added a new claim in their SAC, alleging that Regence discriminated against them when arbitrarily including and administering the Hearing Aid Exclusion because they have no medical or scientific basis to justify it. Anti-discrimination case law has long held that "disability alone is not a permissible ground for withholding medical benefits." *Woolfolk v. Duncan*, 872 F. Supp. 1381, 1389 (E.D. Pa. 1995). Treatment may only be excluded or withheld based upon a "bona fide medical reason." *Id.* at 1390; *see Glanz v. Vernick*, 750 F. Supp. 39, 46 (D. Mass. 1990). In anti-discrimination cases, courts must ensure that the defendant's proffered reasons are not "pretextual … to cover up discriminatory decisions." *Sumes v. Andres,* 938 F. Supp. 9, 12 (D.D.C. 1996); *see also Bragdon v. Abbott*, 524 U.S. 624, 649, 118 S. Ct. 2196 (1998) (Under the ADA, disabled patients may only be excluded from treatment based upon "objective, scientific information," "available medical evidence," or "other credible scientific basis").

---

[11] The OIC never concluded that an "exclusion of treatment for hearing loss is not discriminatory." Dkt. No. 45, p. 21. The Washington Legislature directed the OIC to adopt the Essential Health Benefits ("EHB") benchmark plan based upon Regence's existing health coverage in 2014. *See* RCW 48.43.715 (requiring the OIC to select the largest small group plan by enrollment as the EHB benchmark plan, which was a Regence plan). As a result, Regence's existing Hearing Loss Exclusion was "baked into" the EHB regulations by the Legislature, not the OIC. The Legislature also imposed an independent statutory duty on insurers to ensure that their health benefit design is non-discriminatory. RCW 48.43.0128. Regence must comply with both requirements.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 18
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Federal regulators warned insurers like Regence that they could not arbitrarily exclude or limit certain medical benefits, since such exclusions could be intentional discrimination: "[A]rbitrary age, visit, or coverage limitations could constitute discrimination." 81 Fed. Reg. 31408. Such exclusions or limitations may only be based upon scientific or medical reasons. 81 Fed. Reg. 31405 ("Scientific or medical reasons can justify distinctions based on the grounds enumerated in Section 1557"). Arbitrary exclusions based upon protected traits, including disabling hearing loss, are prohibited. 81 Fed. Reg. 31408; 81 Fed. Reg. 31434. "[P]roffered justifications cannot rely on overbroad generalizations and cannot be hypothesized or invented post hoc in response to litigation." 81 Fed. Reg. 31409. *See also* 81 Fed. Reg. 31434 (a fact specific inquiry is required to determine if a benefit design results in discrimination). "[C]overed entities must use neutral, nondiscriminatory criteria in making decisions as to which benefits and services to cover." Section 1557: Frequently Asked Questions, No. 45.[12] "Issuers are expected to impose limitations and exclusions, if any, based on clinical guidelines and medical evidence, and are expected to use reasonable medical judgment." CMS Letter to Issuers in the Federally Facilitated Market Place (February 17, 2017), p. 7.[13]

This is consistent with Regence's publicly professed bases for adding exclusions and limitations in its health plans. Regence asserts that it uses a clinical process to evaluate whether a medical service should be covered or excluded. *See* https://blue.regence.com/trgmedpol/intro/index.html (last visited 5/24/22). For technology, like hearing aids, Regence conducts a "technology assessment process" that examines five elements: (1) the technology must have final approval from the

---

[12] *See* https://www.hhs.gov/civil-rights/for-individuals/section-1557/1557faqs/index.html (last visited 5/24/22).

[13] *See* https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/Final-2018-Letter-to-Issuers-in-the-Federally-facilitated-marketplaces-and-February-17-Addendum.pdf (last visited 5/24/22).

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 19
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

appropriate governmental regulatory bodies; (2) the scientific evidence must permit conclusions concerning the effect of the technology on health outcomes; (3) the technology must improve the net health outcome; (4) the technology must be as beneficial as any established alternatives; and (5) the improvement must be attainable outside of the investigational settings. *Id.* Hearing aids easily meet all five requirements. Dkt. No. 42, ¶¶93–95. Regence, however, excludes all coverage of hearing aids, without regard for the medical necessity or effectiveness of the treatment. *Id.*, ¶96.

Regence's arbitrary exclusion of the essential coverage required by hearing disabled insureds, without any neutral non-discriminatory reason, is discrimination. As alleged by Plaintiffs, Regence has no objective, medical, or scientific evidence to support its Hearing Aid Exclusion. Dkt. No. 42, ¶96. Even after five years of litigation, Regence has failed to come forward with any explanation or justification for its Hearing Aid Exclusion at all—and certainly none that is grounded in clinical guidelines or medical evidence.

If, as alleged, Regence's Hearing Aid Exclusion was put in place arbitrarily, Regence engaged in the kind of "thoughtlessness," "indifference," and "benign neglect" that constitutes discriminatory deliberate indifference. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996), *quoting Choate*, 469 U.S. at 295. On the other hand, if Regence made an intentional decision to forgo the formal medical and technology review it typically utilizes and, instead, arbitrarily imposed a blanket exclusion on hearing aids, knowing that the services would otherwise be covered, Regence's actions are intentional discrimination. *Schmitt*, 965 F.3d at 954 ("The claim at issue here—that Kaiser designed its plan benefits in a discriminatory way—inherently involves intentional conduct."). That is all that is necessary to plead a claim for discrimination.

Regence claims that Plaintiffs failed to state a claim for "deliberate indifference" by misleadingly relying upon case law involving motions for summary judgment. *See*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 20
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Dkt. No. 45, p. 18, citing to *Updike v. Multnomah Cty.*, 870 F.3d 939, 943 (9th Cir. 2017) and *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1129 (9th Cir. 2001).[14] In any event, Plaintiffs have alleged that Regence has no justification—medical, scientific, or otherwise—for the Exclusion. Dkt. No. 42, ¶96. This is sufficient to plead deliberate indifference discrimination. If Defendants have a "legitimate, non-discriminatory reason" to justify the Exclusion, they must come forward with the reason on summary judgment. *See Brown*, 2017 U.S. Dist. LEXIS 151291, at *7. On the other hand, if discovery shows that Regence had no scientific or medical reason to justify the hearing aid exclusion and, instead, excluded the medically necessary treatment solely because it was "historic," that is the precise form "benign neglect" that Section 1557 was intended to end.

**B. Regence's Violation of RCW 48.43.0128 is a Violation of the Washington Law Against Discrimination.**

Plaintiffs have also properly pled a claim under RCW 48.43.0128 and the WLAD. RCW 48.43.0128 specifically prohibits health carriers from discriminating against individuals due to "present or predicted disability" in both the design of benefits and the implementation of a policy:

(1) A health carrier offering a nongrandfathered health plan … may not:

(a) In its ***benefits design or implementation of its benefits design, discriminate against individuals because of … present or predicted disability*** ….

RCW 48.43.0128(1) (emphasis added). In 2021, the Washington Legislature placed RCW 48.43.0128 directly within the scope of the WLAD. *See* 2SSB 5313 (2021), Sec. 1 (adding RCW 48.43.0128 directly to RCW 49.60.178(1)).

---

[14] Regence misconstrues the legal standard established in *Updike*, which was a "reasonable accommodation" case. The standard Regence quotes—"knowledge that a harm to a federally protected right is substantially likely"—refers to the requirement that a defendant must know that an accommodation is needed before it can be held liable. *See id.*, 870 F.3d at 943. Plaintiffs do not bring a reasonable accommodation claim. In any event, Regence is well aware that it enrolls hearing disabled insureds who need hearing aids in its insurance—that is why it put in place the challenged Exclusion.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 21
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

The WLAD protects consumers' "right to engage in insurance transactions or transactions with health maintenance organizations without discrimination." RCW 49.60.030(1)(e). Any person who is the victim of unfair discrimination may bring a private civil action for injunctive relief, compensatory damages, and attorney fees. RCW 49.60.030(2); *Galbraith v. TAPCO Credit Union*, 88 Wn. App. 939, 950, 946 P.2d 1242 (1997) ("WLAD is not limited to employment discrimination but rather guarantees the right to be free of discrimination in nonemployment settings."). Finally, the WLAD, of course, is to be "liberally construed" in order to "eradicate discrimination." *Floeting v. Grp. Health Coop.*, 192 Wn.2d 848, 852, 434 P.3d 39, 41 (2019), *citing* RCW 49.60.010, RCW 49.60.020. Taken together, these statutes hold that it is unfair discrimination for health insurers, like Regence, to discriminate in the benefit design, or administration of the benefit design, against insureds because of their "present or predicted disability … or other health condition." *See* RCW 48.43.0128.

Regence argues that there is no "private right of action" to enforce RCW 48.43.0128, ignoring the Washington Legislature's inclusion of the statute within the umbrella of the WLAD. For this very reason, Defendants' cases—*Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 346, 449 P.3d 1040 (2019) and *Bennett v. Hardy,* 113 Wn.2d 912, 783 P.2d 1258 (1990)—are unavailing.[15] *See* Dkt. No. 45, pp. 21–22. Under the three-prong test established in *Bennett*, RCW 48.43.0128 and RCW 49.60.178(1) meet all three requirements for private enforcement: (1) Plaintiffs are within the class for whose benefit

---

[15] *Cameron v. Physicians Ins.*, 2004 U.S. Dist. LEXIS 15268, at *10 (D. Or. July 26, 2004), cited by Regence, is irrelevant. It relates to the Oregon law against discrimination, which applied anti-discrimination law only to the sale of insurance policies. *Id.* In contrast, the Washington Legislature established that RCW 48.43.0128 may be enforced via RCW 49.60.178 in an effort to codify in state law key consumer protections under the ACA, including the right to pursue a civil action under a state law anti-discrimination provision. *See* Final Bill Report SHB 1870, found at https://lawfilesext.leg.wa.gov/biennium/2019-20/Pdf/Bill%20Reports/House/1870S%20HBR%20FBR%2019.pdf?q=20220526125620 (last visited 5/26/22) ("Brief Description:  Making state law consistent with selected federal consumer protections in the patient protection and affordable care act").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 22
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

the statute was enacted (disabled insureds); (2) the Legislature **explicitly** created a remedy by including RCW 48.43.0128 as a form of "unfair practice" subject to the WLAD's civil enforcement statute, RCW 49.60.178; and (3) adjudicating that a civil remedy exists under RCW 48.43.0128 and RCW 49.60.178 is consistent with the Legislature's intent. *See* SHB 1870 (2019) ("An Act relating to making state law consistent with selected federal consumer protections in the patient protection and affordable care act."); *Bennett,* 113 Wn.2d at 920–21.

Regence further argues that RCW 48.43.0128 does not contain "an express cause of action." Dkt. No. 45, p. 22. But by designating the activities described in RCW 48.43.0128 as "unfair practices" under RCW 49.60.178, the Legislature made these activities subject to WLAD's private cause of action. *See* RCW 49.60.030(1), (2). The Legislature did not limit enforcement of RCW 48.43.0128 to only the Insurance Commissioner; rather, the Legislature empowered the OIC to issue rules to implement the requirements, without imposing any limitation on the reach of WLAD. Indeed, if the Legislature did not intend RCW 48.43.0128 to be privately enforceable, it could have simply not included the statute under RCW 49.60.178.

Regence concedes that the language of RCW 48.43.0128 is substantially different from Section 1557. Dkt. No. 45, p. 22. Importantly, RCW 48.43.0128 does not reference or incorporate federal disability law. *Id.* Since the WLAD's definition of disability is far broader than federal law, RCW 48.43.0128 prohibits disability discrimination in circumstances that may not be prohibited under federal law. *See*, e.g., Dkt. No. 42, ¶101; RCW 49.60.040(7)(a) (defining disability); *Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611, 618–627, 444 P.3d 606 (2019). Under Washington law, **any** medically cognizable hearing impairment is a "disability" subject to state anti-discrimination protection. *See* RCW 49.60.040(7)(c)(i); *Taylor*, 193 Wn.2d at 617. Plaintiffs have more than adequately pled a claim of disability discrimination under Washington law.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 23
[Case No. 2:17-cv-1609-RAJ]

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

**C.   Plaintiffs Adequately Pled a Violation of the CPA and for Declaratory and Injunctive Relief.**

Ultimately, if the Court concludes that Regence's Exclusion violates RCW 48.43.0128 and the WLAD, then it is a *per se* violation of the CPA. Dkt. No. 42, ¶¶104–108. Regence concedes as much. Dkt. No. 45, p. 22. Similarly, if Plaintiffs' claims under the ACA and/or the WLAD are allowed to proceed, so too must their claims for injunctive and declaratory relief. Regence makes no other argument that these claims are not properly pled. If the Court concludes that Plaintiffs have plausibly pled a claim under either Section 1557 or the WLAD, then their claims under the CPA and for injunctive and declaratory relief must be allowed to proceed.

## IV.   CONCLUSION

By excluding hearing aids from coverage, Regence has created a benefits design that discriminates against those with hearing disabilities. By definition, the hearing-disabled are unable to engage in major life activities due to their hearing disability. 42 U.S.C. §12102. They are impacted differently from those that are not hearing-disabled, who are able to engage in major life activities without hearing aids. *Schmitt*, 965 F.3d at 959, n.8 (claim can be based on showing that "the needs of hearing disabled persons differ from the needs of persons whose hearing is merely impaired such that the exclusion is likely to predominately affect disabled persons.").

Denying hearing disabled individuals access to the very medical intervention that would permit them to overcome the effects of their disability is just the type of discrimination that Section 1557 and Washington law was designed to prevent. Regence's motion to dismiss should be denied.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 24
[Case No. 2:17-cv-1609-RAJ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

DATED:  June 3, 2022.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

_/s/ Richard E. Spoonemore_
Richard E. Spoonemore (WSBA #21833)

_/s/ Eleanor Hamburger_
Eleanor Hamburger (WSBA #26478)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email:    ehamburger@sylaw.com
              rspoonemore@sylaw.com

Of Counsel:

_/s/ John F. Waldo_
John F. Waldo, _Pro Hac Vice Pending_
Law Office of John F. Waldo
2108 McDuffie St.
Houston, TX 77019
Tel. (206) 849-5009
Email: johnfwaldo@hotmail.com

_Attorneys for Plaintiffs_

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 25
[Case No. 2:17-cv-1609-RAJ]

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 3, 2022, I caused the foregoing to be electronically

3

filed with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following:

4

- **Brad S. Daniels**

5

  brad.daniels@stoel.com, janna.leasy@stoel.com

6

- **Eleanor Hamburger**

  ehamburger@sylaw.com, matt@sylaw.com, theresa@sylaw.com, stacy@sylaw.com

7

- **Maren Roxanne Norton**

8

  maren.norton@stoel.com, docketclerk@stoel.com, heidi.wilder@stoel.com, malaika.thompson@stoel.com

9

- **Richard E. Spoonemore**

10

  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com, stacy@sylaw.com

11

- **John F. Waldo**

  johnfwaldo@hotmail.com

12

I further certify that I have mailed by United States Postal Service the document

13

to the following non CM/ECF participants:

14

15

- (No manual recipients)

16

DATED:  June 3, 2022, at Seattle, Washington.

17

*/s/ Richard E. Spoonemore*

18

Richard E. Spoonemore (WSBA #21833)

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT – 26
[Case No. 2:17-cv-1609-RAJ]