THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.S., by and through her parents, R.S. and J.S., and JODI STERNOFF, both on their own behalf, and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>REGENCE BLUESHIELD; and CAMBIA HEALTH SOLUTIONS, INC., f/k/a THE REGENCE GROUP,<br><br>Defendants. | No. 2:17-cv-01609-RAJ<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## I.  INTRODUCTION

In an attempt to recast their complaint yet again, Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opposition") fails in its attempt to manufacture a claim of proxy discrimination, using implausible allegations and the wrong legal test.  Effectively conceding that the Policy *as a whole* is not discriminatory, Plaintiffs narrow the analysis to only the part of the Exclusion that they believe to be more closely associated with disability—hearing aids.  In doing so, Plaintiffs set up a false dichotomy by arguing that: (1) the only hearing-loss-related treatment Regence allegedly covers (basic screening/diagnostic testing) is the only treatment that non-disabled persons require, while (2) a specific hearing-loss-related treatment that Regence

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT (2:17-cv-01609-RAJ) - 1

115773116.5 0027496-00127

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

does not cover (hearing aids) is only required by disabled persons. Plaintiffs' theory should be rejected for at least three reasons.

*First*, regarding testing and screening, Plaintiffs rely on implausible allegations and illogical inferences. Plaintiffs fail to plausibly allege that Regence in fact covers basic screening or diagnostic testing for hearing loss. Plaintiffs' new "evidence" not only does *not* demonstrate that Regence covers such services, but it is inadmissible hearsay as well. More importantly, even accepting Plaintiffs' assertions about Regence's scope of coverage, Plaintiffs fail to demonstrate that basic screening or diagnostic testing would only benefit non-disabled persons, that disabled persons would not benefit from such treatment, or that non-disabled persons would not require further routine testing for hearing loss. As a result, Plaintiffs do not establish even at this stage that the benefits Regence offers for hearing-related testing or screening are somehow intentionally designed to benefit only non-disabled persons, or that non-disabled persons get all the hearing-related treatment they need, while disabled persons do not.

*Second*, Plaintiffs' focus on hearing aids also does not demonstrate proxy discrimination. Applying the wrong legal standard, Plaintiffs argue that all disabled persons require hearing aids, while almost no non-disabled persons would need them. But that assertion is implausible, inconsistent with Plaintiffs' own allegations and logic, and ignores the coverage for cochlear implants—treatment that unquestionably addresses the needs of some disabled persons.

*Third*, the premise of Plaintiffs' approach is fundamentally flawed. Any "fit" between exclusion and disability can be created by narrowing the exclusion to only one type of treatment that addresses the most severe physical conditions. But there is no support for that theory of intentional, or proxy, disability discrimination in *Schmitt* or any other case.

Even accepting Plaintiffs' allegations and assertions, Regence's coverage for hearing loss includes some treatment that benefits both disabled and non-disabled persons (basic and diagnostic testing), does not cover some treatment that would benefit both disabled and non-disabled persons (routine testing and hearing aids), and covers treatment that benefits almost

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT (2:17-cv-01609-RAJ) - 2

exclusively disabled persons (cochlear implants). That benefit design—which is consistent with the carefully crafted regulatory requirements governing this complex marketplace—simply does not support a claim of intentional discrimination by proxy against the disabled.

Plaintiffs' remaining theories in the Second Amended Complaint ("SAC") also fail. The Ninth Circuit analyzes disparate impact claims under the Affordable Care Act ("ACA") pursuant to the test outlined by the Supreme Court in *Choate*, which requires denial of meaning access to a benefit that is available to other insureds, and Plaintiffs have not been denied such access—whether that benefit is hearing aids or hearing treatment more generally. Furthermore, Plaintiffs' intentional discrimination theory is not a separate claim for relief but rather an additional element required for recovery of damages. Even if intentional discrimination could be asserted as a standalone claim, Plaintiffs' allegations are conclusory and unsupported. Finally, Plaintiffs' state law claims must also be dismissed. The Washington Legislature did not add a private right of action to RCW 43.48.0128 as Plaintiffs claim, and even if it had, conduct that is expressly allowed by regulation cannot violate state law. Plaintiffs acknowledge that their claims under the Consumer Protection Act ("CPA") and for declaratory and injunctive relief rise and fall with other claims.

## II. ARGUMENT

### A.  Plaintiffs Fail to State a Claim for Proxy Discrimination.

To state a claim of proxy discrimination, the "fit" between the disabled and the group impacted by the Exclusion must be "so close" that discrimination "can be inferred without more." *Davis v. Guam*, 932 F.3d 822, 838 (2019).[1] Plaintiffs attempt to meet this burden by intermixing the "needs-based" approach suggested in *Schmitt v. Kaiser Foundation Health Plan of Washington* (and that failed to state a claim in Plaintiffs' first Amended Complaint) with an alleged statistical fit between the Policy and disability—an approach that failed in Plaintiffs' first

---

[1] As Defendants previously explained, Plaintiffs' interpretation of *Schmitt* and its progeny is incorrect. (Dkt. 45 at 6-7.) Plaintiffs' Opposition does not respond to that argument, and Plaintiffs continue to use the incorrect standard that the proxy need only "predominately affect disabled persons." (*See* Dkt. 49 at 12, 16, 18-19.)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 3

Complaint.  965 F.3d 945, 959, n.8 (9th Cir. 2020).  Both approaches rely on attempts to artificially limit the Court's analysis: (1) by erroneously claiming that coverage for screening and diagnostic testing exists and addresses all hearing needs of nondisabled insureds, and (2) by challenging only the exclusion of hearing aids rather than the exclusion of all hearing treatment other than cochlear implants.  Plaintiffs' new arguments do not state a claim for several reasons.

### 1. Plaintiffs Do Not Allege That Regence Covered Their Screening and Diagnostic Tests.

The SAC does not allege that Regence has actually provided Plaintiffs with coverage for screening or diagnostic testing.[2]  Instead, they allege that their Policy hypothetically covers such testing as a matter of contract interpretation because it covers routine physical examinations and diagnostic services generally.  Defendants' Motion showed that the sources Plaintiffs relied on do not support that assertion. (Dkt. 45 at 15-16.)  In conjunction with their Opposition, Plaintiffs filed a declaration from attorney Rick Spoonemore, who merely repeats expert testimony and attaches four exhibits. (Dkt. 50.)  The Court should disregard the Spoonemore Declaration and its attached exhibits because extrinsic evidence is improper in opposition to a motion to dismiss under Rule 12(b)(6).  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (2001).

But even if the Court were to consider the declaration and exhibits, they have little to no persuasive value and do not support Plaintiffs' contentions.  In the declaration, Mr. Spoonemore repeats the hearsay testimony of a retained expert who allegedly opines, independent of Regence's actual practice, that "routine hearing examinations" do not include diagnostic hearing tests. (Dkt. 50 ¶ 2.)  Mr. Spoonemore then also repeats hearsay testimony of certain unnamed providers who allegedly confirm the expert's understanding. (*Id.* ¶ 3.)  None of this evidence is admissible, nor is it relevant to the sufficiency of Plaintiffs' SAC, which again, does not allege that Plaintiffs ever actually received coverage from Regence for a screening or diagnostic test.

---

[2] Plaintiffs' initial Complaint alleged that they were forced to pay out of pocket for testing.  (Dkt. 1 ¶ 31.)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 4

Likewise, none of the exhibits show that Regence covered screening or diagnostic hearing tests. Mr. Spoonemore says Exhibit A shows that "evaluations by E.S.'s otolaryngologist, Kathleen Sie, M.D. . . . were covered by Regence," but it shows no such thing. While Exhibit A shows a charge of $1,567.00 for "Aud osseo dev, int/ext comp," the full amount is listed as "Disallow," leaving a "Total Patient Liability" of $1,567.00. (Dkt. 50-1 at 2.) The other exhibits, at most, show that one of the Plaintiffs was medically cleared for a hearing aid but do not indicate whether Regence provided coverage or, as they previously alleged, Plaintiffs paid out of pocket. (Dkt. 50-3, 50-4.)

**2.  Screening and Diagnostic Testing Does Not Address All the Needs of Non-Disabled Insureds.**

Even if Plaintiffs were correct that Regence covers some diagnostic testing, that does not establish any more of a fit between the Exclusion and the disabled. It is undisputed that, if such services were covered, they would be covered for both disabled and non-disabled insureds, and neither group has more of an inherent need for such tests. Furthermore, Plaintiffs completely ignore the Policy's exclusion of routine hearing examinations, which even Plaintiffs' expert acknowledges are "ongoing evaluations conducted by audiologists." (Dkt. 50 ¶ 2.) Contrary to Plaintiffs' contention that screenings and diagnostic testing comprise all of the hearing-related medical needs of non-disabled insureds, any insured diagnosed with non-disabling hearing loss would specifically need such ongoing evaluations to track the progression of their hearing loss.[3] Insureds with no hearing loss also may want regular hearing examinations by an audiologist if, for example, hearing is important to their profession. Plaintiffs also fail to acknowledge that a significant number of insureds with non-disabling hearing loss benefit from, and wear, hearing aids.[4] Plaintiffs' "needs-based" argument for proxy discrimination therefore requires that the

---

[3] Statistics cited by Plaintiffs show that 66.5% of individuals with hearing loss are not disabled. (Dkt 41 at 14-15.)

[4] Plaintiffs cite statistics showing that 25-28% of people who use a hearing aid are not disabled. (Dkt. 42 ¶ 86(c).)

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 5

Court ignore both the needs of insureds with little to no hearing loss *and* the exclusion of routine hearing examinations in the Policy.

### 3. Plaintiffs Cannot Manufacture a "Fit" by Narrowing the Scope of the Analysis.

The primary way in which Plaintiffs attempt to differentiate the SAC from their prior complaints is to allege that the Policy discriminates by excluding hearing *aids* rather than hearing *treatment* generally. (*See* Dkt. 49 at 8 (narrowing claims to address exclusion of hearing aids "permits conclusions on the proxy's 'fit'").) This is nothing more than an attempt to create a fit where none exists by ignoring parts of the Policy that exclude coverage applicable to insureds with non-disabling hearing loss. The Court should reject this approach out of hand.

Almost any exclusion or restriction that applies to both the disabled and non-disabled can be broken down into subparts that may be more or less favorable to either group. The Ninth Circuit in *Schmitt* specifically rejected such attempts to formulate the question so as to suggest the answer: **"[A] section 1557 plaintiff cannot define the benefit so narrowly as to require an insurer to curate coverage for each individual's health care needs."** *Schmitt*, 965 F.3d at 959. That is precisely what Plaintiffs seek to do here. After this Court and the Ninth Circuit found that the proxy's fit with disability was not sufficiently close to infer discrimination, Plaintiffs amended their complaint to redefine the benefit at issue to more closely match their specific needs. The Policy did not change, and the statistics did not change. Plaintiffs simply ask the Court to ignore the Policy provisions that are less favorable to their claim. The Court should decline the invitation.

Properly viewed in the context of the Policy as a whole, including the full Exclusion, Plaintiffs' proxy discrimination claim fails for the reasons previously articulated by this Court. (Dkt. 41 at 14-16.) Only 27.9% of the hearing loss population is disabled and affected by the Exclusion. (*Id.* at 15.) 66.5% of people with hearing loss are not disabled—more than double the number of disabled individuals. (*Id.*) And even among the disabled, those with the most

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT (2:17-cv-01609-RAJ) - 6

115773116.5 0027496-00127

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

severe disabilities receive coverage for cochlear implants.  (*Id.* at 16.)  Plaintiffs' Policy does not discriminate against the hearing disabled, and their ACA claim should be dismissed.

### 4. *Fuog* Does Not Support Plaintiffs' New Proxy Theory.

Plaintiffs' Opposition relies on *Fuog v. CVS Pharmacy*, in which the District of Rhode Island found that the disabled plaintiff stated a claim under Section 1557 by alleging that her pharmacy's policy of refusing to fill opioid prescriptions above a certain dosage was discriminatory.  (Dkt, 49 at 7, 17 (citing No. CV 20-337 WES, 2022 WL 1473707, at *5-7 (D.R.I. May 10, 2022)).)  *Fuog*, however, is distinguishable and is not binding on this Court.[5]

The court in *Fuog* initially dismissed the plaintiff's complaint but allowed the amended proxy discrimination claim to move forward after the plaintiff cited "a series of studies indicating a strong statistical correlation between rates of disability and the prevalence and size of opioid prescriptions." *Id.* at *3.  *Fuog* therefore stands for the unremarkable proposition that a plaintiff can show a fit between a proxy and disability by using statistical allegations.  Here, however, this Court has already found that Plaintiffs' attempt to do that showed that "[t]he non-disabled proportion of th[e] proxy outnumbers the disabled proportion by at least 2-to-1." (Dkt. 41 at 16.)  As discussed, Plaintiffs' response to this was to improperly ask the Court to ignore the parts of the Policy's Exclusion that are more likely to apply to non-disabled insureds.  Plaintiffs have failed to allege the strong statistical correlation found in *Fuog*, and that case's proxy discrimination analysis is therefore inapposite.

---

[5] Plaintiffs actually cite three new cases in support of their narrower focus on only one part of the broader Exclusion. (Dkt. 49 at 7.) Apart from *Fuog*, the other two cases do not address any issues presented by Defendants' Motion. In *C.P. v. Blue Cross Blue Shield of Illinois*, this Court denied the defendant's motion to dismiss, finding that the allegation that it denied coverage for transgender reassignment surgery was sufficient to state a claim for discrimination on the basis of sex. 536 F. Supp. 3d 791, 797 (W. D. Wash. 2021). And in *T.S. v. Heart of CarDon, LLC*, the court determined that the plaintiff had standing to assert a claim under Section 1557 even though he was not a direct recipient of federal funding provided to the defendant. No. 120CV01699TWPTAB, 2021 WL 981337, at *9 (S.D. Ind. Mar. 16, 2021), *reconsideration denied, motion to certify appeal granted*, No. 1:20-CV-01699-TWP-MG, 2021 WL 2946447 (S.D. Ind. July 14, 2021).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 7

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

115773116.5 0027496-00127

Case 2:17-cv-01609-RAJ   Document 51   Filed 06/17/22   Page 8 of 14

B.  **Plaintiffs Fail to State a Disparate Impact Claim Under the ACA.**

Disparate impact claims under the ACA are subject to the same test as discrimination claims under Section 504 of the Rehabilitation Act. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020). Pursuant to the controlling case, *Alexander v. Choate*, not all disparate impact showings are actionable—only those in which "an otherwise qualified" disabled individual is denied "meaningful access to the benefit that the grantee offers." 469 U.S. 287, 301, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985); *see also Schmitt*, 965 F.3d at 950 (9th Cir. 2020) ("section 504 does not require an insurer to design plan benefits so as to avoid imposing a disproportionate burden on disabled people—the insurer need only provide disabled people 'meaningful access' to whatever benefits it chooses to offer.").[6]

Plaintiffs' disparate impact theory in the SAC fails for the same reason as their meaningful access claim in the first Complaint, which the Court previously dismissed (Dkt. 22 at 5): Because the exclusions of both hearing treatment and hearing aids apply to all insureds, Plaintiffs are not denied meaningful access to benefits available to non-disabled insureds.

Plaintiffs argue in response is that the relevant "benefit" for this analysis should be "coverage of hearing aids" rather than the full Exclusion. (Dkt. 49 at 21.) They contend that "the ACA statute and regulations" require coverage of hearing aids as a "[r]ehabilitative [or] habilitative service[]," and exclusion therefore denies "them access to the essential medical equipment that would address and ameliorate their disability, while non-disabled insureds are able to have their needs . . . met." (*Id.* at 21-22.) This is wrong on two counts.

First, neither the ACA nor its implementing regulations mandate coverage of hearing aids. Defendants addressed this more fully in their first Motion to Dismiss. (Dkt. 11 at 9-10.) In short, the ACA mandates coverage of "essential health benefits" ("EHB"), which include some

---

[6] Despite Plaintiffs' contention that they did not previously plead a disparate impact claim, they did allege discrimination based on a facially neutral policy. (*See generally* Dkt. 1.) Furthermore, Defendants' first Motion to Dismiss and this Court's opinion analyzed the claim under *Choate*. Contrary to Plaintiffs' assertion, Defendants did not "lose" this argument in the Ninth Circuit or else Plaintiffs would have stated a claim. Instead, recognizing that *Choate*'s meaningful access theory did not apply, the Court addressed their proxy discrimination theory.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

115773116.5 0027496-00127

"[r]ehabilitative and habilitative services and devices," but the Secretary of Health and Human Services left it to each state to articulate the scope of EHBs in that state. 42 U.S.C. § 18022(b), 18022(b)(1)(G), 18022(b)(2)(A). States did so through the adoption of a "benchmark plan," and Washington's benchmark plan does not mandate coverage of hearing aids. WAC 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(7)(b)(i) & (c)(iv). This Court also addressed this issue in *Schmitt*:

> The list of EHBs includes "[r]ehabilitative and habilitative services and devices" of equal scope as that provided under a typical employer plan. 42 U.S.C. § 18022(b)(1)(G) and (b)(2)(A). In Washington, the "benchmark" plan of a typical employer covers cochlear implants, but not hearing aids. WAC § 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(7)(b)(1) and (c)(4). Plaintiffs are not arguing that defendants violated the ACA by failing to cover an EHB.

*Schmitt v. Kaiser Found. Health Plan of Washington*, No. C17-1611RSL, 2018 WL 4385858, at *2 (W.D. Wash. Sept. 14, 2018).[7]

Second, Plaintiffs' argument misstates the appropriate inquiry. *Choate* asks whether the disabled have meaningful access to a benefit *that is accessible to others*. Even if the relevant benefit for Plaintiffs' claim were "hearing aids," as alleged in the SAC, the claim still fails because *no insureds* have access to coverage for hearing aids. Plaintiffs try to avoid this problem by framing the inquiry as whether they received meaningful access to the treatment they need. (Dkt. 49 at 22.) But if that were the test, then the ACA would mandate coverage of every treatment needed by any disabled insured. As the Ninth Circuit noted, the ACA "does not guarantee individually tailored health care plans;" it attempts to provide adequate health care through EHBs, which do not include hearing aids. *Schmitt*, 965 F.3d at 955.[8]

Plaintiffs again cite *Fuog* in support of their contention that the ACA mandates that they receive "effective treatment for their disability." (Dkt. 49 at 23 (citing 2022 WL 1473707, at *6–

---

[7] Contrary to Plaintiffs' suggestion, Defendants' Motion did not argue that the state benchmark plan's exclusion of hearing aids was relevant to their disparate impact theory. Defendants only raise the issue here because Plaintiffs wrongly suggest that ACA regulations mandate coverage of hearing aids.

[8] Plaintiffs' reliance on *CVS Pharmacy* is misplaced. (Dkt. 49 at 21-22.) In that case, the benefit at issue was the plaintiff's "prescription drug benefit as a whole," which was both an EHB under the ACA *and* a benefit that was available to non-disabled insureds. *CVS Pharmacy*, 982 F.3d at 1210. Hearing aids are neither.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT (2:17-cv-01609-RAJ) - 9

7).) *Fuog*'s discussion of disparate impact, however, does not aid Plaintiffs here. In *Fuog*, the district court sustained the plaintiff's disparate impact theory after finding that the benefit at issue was the right to have her prescription filled according to her doctor's judgment. 2022 WL 1473707, at *6. As pled, her claim alleged that the pharmacy provided this benefit to non-disabled insureds but denied her meaningful access to it. *Id.* at *6-7. Plaintiffs here, however, cannot make the same allegation. Whether the benefit is the Policy as a whole, coverage for hearing loss, or coverage for hearing aids specifically, the disabled and non-disabled have exactly the same access. Plaintiffs can only create a disparate impact by defining the benefit as coverage for treatment that they need, which the ACA does not guarantee.

This Court has already rejected Plaintiffs' "meaningful access" theory, and the Ninth Circuit has confirmed that that is still the test for disparate impact claims under the ACA. Plaintiffs cannot state a claim under this theory for a benefit that is not provided to any insureds.

**C.     Plaintiffs Fail to Plead a Claim for "Deliberate Indifference."**

Plaintiffs' third theory under the ACA is that Defendants intentionally discriminated against the hearing disabled by excluding coverage for hearing aids without medical justification. (Dkt. 42 ¶¶ 93-99.) Plaintiffs claim that hearing aids are eligible for coverage under Regence's "technology assessment process," and the decision not to cover them was "an intentional choice or, at the very least, the result of deliberate indifference to the effect it would have on its insureds with disabling hearing loss." (*Id.* ¶ 99.) Although Plaintiffs' Opposition describes this theory as "a new claim," the allegations do not support an independent claim. Instead, they only seek to allege the state of mind necessary for the recovery of damages, and they fail to plead even that element of the claim.

The Ninth Circuit, in *Schmitt*, noted that "a *mens rea* of 'intentional discrimination' . . . by showing 'deliberate indifference' or 'discriminatory animus'" was required for the plaintiffs "*[t]o be entitled to monetary damages*." *Schmitt*, 965 F.3d at 954, n.6 (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008)) (emphasis added). The Court's opinion in

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 10

115773116.5 0027496-00127

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

*Lemahieu* explains that a showing of deliberate indifference is an *additional* element for damages on a meaningful access (or proxy discrimination) claim:

> Our cases on the appropriate *mens rea* standard for a § 504 damages remedy recognize—as they must after *Crowder*—that § 504 itself prohibits actions that deny disabled individuals "meaningful access" or "reasonable accommodation" for their disabilities. Those cases then go on to analyze the state of mind with regard to a denial of "meaningful access" or "reasonable accommodation" ***necessary to justify monetary damages***. As to this latter question, we have held that plaintiffs must prove a *mens rea* of "intentional discrimination," to prevail on a § 504 claim, but that that standard may be met by showing "deliberate indifference," and not only by showing "discriminatory animus." Thus, a public entity ***can be liable for damages*** under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.

*Lemahieu*, 513 F.3d at 938 (citations omitted) (emphasis added).

Plaintiffs' SAC seeks damages allegedly incurred as a result of Defendants' deliberate indifference. But merely alleging intentional conduct through deliberate indifference does not eliminate the need to show discrimination in the first place, whether through proxy discrimination or a lack of meaningful access. As argued in Defendants' Motion, Plaintiffs cannot show that the Exclusion is discriminatory, and they cannot do an end run around the meaningful access or proxy discrimination tests simply by alleging that Defendants intentionally discriminated against them. (Dkt. 45 at 24.)

Even if Plaintiffs could state a claim merely by alleging intentional discrimination, the allegations in the SAC are conclusory and unsupported. As discussed in Plaintiffs' Motion, the "technology assessment process" that Plaintiffs claim Defendants ignored does not control coverage decisions. (*Id.* at 25.) Instead, it is just one of many factors that contribute to the development of *medical policies*, and those medical policies merely "provide guidelines for determining coverage criteria."[9] Plaintiffs' attempt to plead intentional discrimination based on this policy manual fails.

---

[9] *See* https://blue.regence.com/trgmedpol/intro/index.html.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 11

In sum, Plaintiffs fail to allege facts sufficient to state a claim pursuant to any of their three theories under the ACA. Count I of the SAC should be dismissed.

**D.     Plaintiffs Fail to State a Claim Under RCW 48.43.0128.**

Plaintiffs have modified their claim under RCW 48.43.0128, now seeking to assert a direct claim under the statute rather than asserting it as a breach of contract claim. (Dkt. 42 ¶¶ 100-03.) The statute, however, does not provide a private right of action, and Plaintiffs' contention to the contrary is based on a misreading of statutory text. Even if the statute did allow a direct claim, that claim would fail for the same reason stated in Defendants' prior motion: Regence cannot have violated a state statute by complying with its implementing regulations.

Plaintiffs first argue that the Washington Legislature amended RCW 49.60.178 in 2021, adding a private right of action for violation of RCW 48.43.0128. (Dkt. 49 at 27-29.) The text of the statutes, however, does not support this assertion. RCW 49.60.030(2) provides a right of action to "[a]ny person deeming himself or herself injured by any act in violation of this chapter"—Chapter 49. But Plaintiffs are suing under RCW 48.43.0128, which is in Chapter 48, so the right of action does not apply. Nor does amended RCW 49.60.178 allow a right of action. That statute is titled, "Unfair practices with respect to insurance *transactions*," (emphasis added), and its text is limited to the cancellation, issuance, and renewal of policies: "It is an unfair practice for any person . . . in connection with an insurance transaction . . . to cancel or fail or refuse to issue or renew insurance . . . to any person because of . . . the presence of any sensory, mental, or physical disability . . . ." RCW 49.60.178(1). It further requires that, to be actionable, the unfair practice must *also* violate one of three other statutes, one of which is RCW 48.43.0128. *Id.* But that does not make a violation of RCW 48.43.0128 actionable by itself. Plaintiffs' claim here does not allege that Regence canceled or refused to issue or renew their policy, and RCW 49.60.178 does not apply.[10]

---

[10] Plaintiffs' claim also fails because the statute's implementing regulations expressly allow the exclusion of hearing aids and other hearing treatment. WAC 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(1)(b)(vii). It makes no difference how OIC determined the benchmark plan (Dkt. 49, n.11), adherence to regulations cannot be a violation of state law.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT (2:17-cv-01609-RAJ) - 12

### E. Plaintiffs Fail to State Claims Under the Consumer Protection Act and for Declaratory and Injunctive Relief.

Plaintiffs' Opposition concedes that they may only state a claim under the CPA if they successfully plead a claim under RCW 48.43.0128. (Dkt. 49 at 30.) Similarly, Plaintiffs acknowledge that their claims for declaratory and injunctive relief rise and fall with their other claims. (*Id.*) Because Plaintiffs have failed to state any claims for relief, as discussed above, their claims under the CPA and for declaratory and injunctive relief must also be dismissed.

### F. The Court Should Deny Leave to Replead.

Plaintiffs' third failed attempt to plead a discrimination claim makes clear that further amendment would be futile. Instead of pleading additional facts in support of their claims, Plaintiffs have improperly attempted to narrow the Court's focus—an implicit recognition that they cannot plead a claim based on the Policy as a whole. Furthermore, as discussed above, the extrinsic evidence that they improperly submitted does not support the contention for which it is cited and therefore would not aid a future complaint.

### III. CONCLUSION

For the reasons above, Defendants respectfully request that the Court grant their Motion and deny Plaintiffs leave to amend.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 13

115773116.5 0027496-00127

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

DATED: June 17, 2022.

STOEL RIVES LLP

/s/Maren Norton
Maren R. Norton, WSBA No. 35435
maren.norton@stoel.com
Brad S. Daniels, WSBA No. 46031
brad.daniels@stoel.com

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

Attorneys for Defendants

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (2:17-cv-01609-RAJ) - 14

115773116.5 0027496-00127

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900