HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.S., by and through her parents, R.S. and J.S., and JODI STERNOFF, both on their own behalf and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>REGENCE BLUESHIELD and CAMBIA HEALTH SOLUTIONS, INC., f/k/a THE REGENCE GROUP,<br><br>Defendants. | CASE NO. C17-1609-RAJ<br><br>ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint. Dkt. # 57.[1] Having considered the submissions, the record, and the applicable law, the Court finds oral argument unnecessary and **GRANTS** the motion in part and **DENIES** it in part for the reasons set forth below.

## II.   BACKGROUND

According to their Third Amended Complaint ("TAC"), Plaintiffs are a mother and

---

[1] Defendants also move to strike references in Plaintiffs' response to certain extrinsic evidence. *See* Dkt. # 63 at 5 n.2.  Because the Court did not consider this evidence, it DENIES Defendants' request as moot.

ORDER - 1

daughter who are disabled based on hearing impairment(s). Dkt. # 54 ¶¶ 103, 111. Each require prescription hearing aid devices, albeit of different varieties. *Id.* ¶¶ 105, 109, 111, 113. Defendant Regence BlueShield ("Regence") is a Washington health insurer and Defendant Cambia Health Solutions ("Cambia") is its sole member and owner. *Id.* ¶¶ 23, 24. Plaintiffs allege they were insured by Regence, who denied them hearing aid coverage. *Id.* ¶¶ 21, 22, 105, 112. Regence's denial was consistent with its policy, at least at the time,[2] to exclude coverage for hearing aids, short of cochlear implants. *Id.* ¶¶ 2, 7–12. Because Regence did not similarly limit benefits for other medical conditions, and because Plaintiffs' hearing loss constitutes a federally and state recognized disability, Plaintiffs contend that Regence's policy exclusion represents impermissible discrimination against the hearing impaired. *Id.* ¶ 14. The resulting putative class action has taken a winding path.

### A.   Original Complaint

Plaintiffs first filed suit in 2017. Dkt. # 1. At the time, they asserted a single claim: disability discrimination pursuant to section 1557 of the Affordable Care Act ("ACA"). Dkt. # 1 ¶¶ 33–39. The ACA prohibits discriminatory conduct (such as plan benefit design) in health care. *See* 42 U.S.C.A. § 18116. The Court dismissed the complaint for failure to state a claim, reasoning that, at least as pleaded, Regence's policy exclusion applied with equal force to all persons, regardless of their level of hearing impairment, *i.e.*, the disabled and non-disabled alike. Dkt. # 22 at 5–8. Thus, a discrimination claim was not plausible. *Id.*

The Ninth Circuit affirmed, *see E. S. by and through R.S. v. Blueshield*, 812 F. App'x 539 (9th Cir. 2020), but it remanded to allow Plaintiffs leave to amend in light of its recent decision in *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945 (9th Cir. 2020). In *Schmitt*, the court found—for the first time—that insureds could state a section 1557 claim for discriminatory plan benefit design based on a proxy discrimination theory (a form of intentional discrimination).

---

[2] Beginning in 2023, Regence added prescription hearing aid benefits to some of its plans but, according to the TAC, limited it to $1000 annually. *Id.* ¶ 13. Plaintiffs aver this benefit level is inadequate to meet their needs. *Id.* ¶¶ 110, 114.

ORDER - 2

*Id.* at 955. This Court thoroughly discussed *Schmitt*'s import in a prior order, *see* Dkt. # 41 at 4–5, and it will not repeat that discussion here.

### B.   Amended Complaint

In filing their Amended Complaint, Plaintiffs leaned into *Schmitt*'s proxy discrimination theory. *See generally* Dkt. # 32. Specifically, they alleged that those with a certain level of hearing loss are disabled, and that Regence, by not providing a hearing loss benefit besides cochlear implants, discriminated in its plan benefit design against those individuals. *See* Dkt. # 32 ¶¶ 41–50, 61–64. This is because a majority of such individuals do not qualify for cochlear implants, while those with mild hearing loss, *i.e.*, who are not disabled, do not seek hearing loss treatment (and therefore are not impacted by the plan's lack of benefits). *Id.* ¶¶ 113–124. The Court again dismissed Plaintiffs' complaint, but this time with leave to amend. *See* Dkt. # 41 at 20. Dismissal of the ACA claim was based on a failure to plausibly plead proxy discrimination. *See id.* at 12–17. Specifically, the Court concluded the fit allegations were conclusory and not borne-out by the supporting statistics and analysis[3] incorporated into the complaint. *Id.* at 13–15.

### C.   Second Amended Complaint

Next came a Second Amended Complaint ("SAC"). Dkt. # 42. But the SAC relied on the same statistics and analysis as before. Dkt. # 53 at 3–4.[4] Accordingly, the Court again found that Plaintiffs failed to adequately plead *Schmitt*'s proxy discrimination fit requirements, and it dismissed the SAC with leave to amend. *Id.* at 3–6.

### D.   Third Amended Complaint

In a Third Amended Complaint ("TAC"), Dkt. # 54, which is presently before the Court,

---

[3] Plaintiffs, by referencing these statistics and analysis in their amended complaint, invited the Court to verify Plaintiffs' reasoning. *See* Dkt. # 41 at 13–14. In doing so, the Court found Plaintiffs' deductions flawed and, therefore, incapable of supporting the otherwise conclusory statements. *Id.* at 15–16.

[4] While the SAC also included allegations supporting disparate treatment and/or disparate impact, Dkt. # 42 ¶¶ 88–99, they were conclusory and lacked supporting facts. *Id.* at 4.

ORDER - 3

Plaintiffs continue to plead proxy discrimination (along with other forms of intentional and unintentional discrimination), but they do so in a changed landscape and with a different proxy.

Those landscape changes, as articulated in the TAC, include the following:

- In 2020, Regence modified its hearing loss policy exclusion to apply to "hearing aids and related treatment" rather than treatment for hearing loss. *Id.* ¶¶ 11, 42.
- In 2022, the federal government made certain types of hearing aids available over-the counter ("OTC"), *i.e.*, without a prescription. *Id.* ¶ 12.
- In 2023, Regence added a $1,000 annual benefit for prescription hearing aids, *i.e.*, non-OTC hearing aids, and related examinations. *Id.* ¶ 13.  It applies no similar cap to other durable medical equipment. *Id.*
- Despite Regence's policy exclusion barring hearing exams, the insureds, disabled and non-disabled alike, still effectively receive them through diagnostic and other procedures. *Id.* ¶¶ 9–10, 43–45.

And Plaintiffs' newly proffered proxy is as follows: an individual requiring a hearing aid. *See id.* ¶¶ 94–102.  According to the TAC, nearly all individuals who are prescribed hearing aids (and therefore affected by Regence's exclusion) are "disabled" under federal law.[5]  *Id.* ¶ 60. This is because hearing aids are generally prescribed when there is an objective diagnosis of hearing impairment, together with subjective impact on daily life. *Id.* ¶ 58.  Thus, anyone requiring a hearing aid is, by proxy, a person with a hearing disability. *Id.* ¶¶ 75, 80, 95.  And by barring coverage for all but cochlear implants, Defendants are intentionally discriminating against persons with a hearing disability. *See generally id.*

Accordingly, Plaintiffs seek money damages and attorney fees based on violations of the ACA, the Washington Law Against Discrimination ("WLAD"), RCW 43.30.300, and the

---

[5] For purposes of § 1557, "disability" is defined according to Section 504 of the Rehabilitation Act, which, in turn "incorporates the definition of disability in the Americans with Disabilities Act (ADA), as amended."  45 C.F.R. § 92.102(c).  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).

ORDER - 4

Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq*. *Id.* ¶¶ 127–201. They also seek declaratory and injunctive relief. *Id.* ¶¶ 202–204. Defendants move to dismiss each claim pursuant to Rule 12(b)(6). Dkt. # 57.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint for failure to state a claim. According to the rule, the Court assumes the truth of the complaint's factual allegations and credits all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). To avoid a Rule 12(b)(6) dismissal, a plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### IV.   DISCUSSION

#### A.   Plan Benefit Design—Proxy Discrimination

According to the TAC, Defendants engaged in three flavors of discriminatory conduct towards the hearing disabled: proxy discrimination (a form of intentional discrimination), disparate impact, and disparate treatment. *See, e.g.*, Dkt. # 54 ¶¶ 137, 169, 175. As described below, the Court concludes proxy discrimination is now adequately pleaded. Because this alone is sufficient to support a discrimination claim, the Court focuses solely on the proxy discrimination theory for purposes of the instant motion.

As a brief review,[6] proxy discrimination results from a "'policy that treats individuals differently on the basis of seemingly neutral criteria.'" *Davis v. Guam*, 932 F.3d 822, 837 (9th Cir. 2019) (quoting *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992)). If excluding criteria is "so closely associated with the disfavored group," then "facial discrimination'" against that group is reasonably inferred. *Id.* For example, gray hair might be used as a proxy to

---

[6] *See* Dkt. #41 at 5–7 for a fuller discussion.

ORDER - 5

exclude those over a certain age. *See, e.g.*, *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013).

Fundamentally, the key question in this case, like any proxy discrimination case, is whether the proxy's "fit" to a protected characteristic is "sufficiently close" to make a discriminatory inference plausible. *Id.* While a cause of action based on proxy discrimination "does not require an exact match," the "fit [must be] so close that [discrimination] can be inferred." *Davis*, 932 F.3d at 838. In assessing fit in this context, the Court looks to the "policy's disproportionate effect on disabled insureds (overinclusion), ability to service the needs of similar disabled insureds (underinclusion), historical enactment, or targeted enforcement." Dkt. # 41 at 7. Based on an application of this rubric to the TAC's allegations, the Court must now conclude that the proxy's "fit" is, as pleaded, sufficiently close to make a discriminatory inference plausible.

### i. *Overinclusion and Underinclusion*

In evaluating the policy's overinclusion and/or underinclusion, the critical issue is whether the need for hearing aids, short of cochlear implants, "primarily affects [the hearing disabled]." *Schmitt*, 965 F.3d at 959. If so, Plaintiffs have successfully shown that the proxy—the need for such hearing aids—is neither unduly over nor under inclusive. By way of review, the SAC primarily demonstrated this through a reliance on an arbitrary level of hearing loss, as determined on the audiometric scale. Dkt. # 42 ¶¶ 25–27. It asserted that individuals with hearing loss above this level were, in fact, disabled. *Id.* It then provided the Court with a statistical analysis of what portion of the insureds those individuals might make up, which the Court rejected as an inadequate fit to the hearing loss treatment exclusion in Regence's policy. Dkt. # 53 at 3–4.

But as the TAC now explains, audiometric levels are not determinative. The decision to prescribe hearing aids is, ultimately, based on "subjective reports to a medical provider of a significant impact from the hearing loss on their daily functioning." Dkt. # 54 ¶ 58. Said

ORDER - 6

another way, "all or very nearly all individuals who obtain prescription hearing aids are 'disabled' under federal law" because they "experience a substantial impact of their hearing loss in their daily lives." *Id.* ¶¶ 60, 74, 75.[7] And while cochlear implants are available, those who would qualify are a small minority. *See id.* ¶ 68.

For these reasons the Court finds that the exclusion is neither over nor under inclusive, at least so much as to jeopardize Plaintiffs' case at this point in the proceeding.

### ii. *Historical Enactment*

While not as important as inclusion levels, historical facts matter, as they speak to intent. *See Davis*, 932 F.3d at 838. And here, for the first time, the TAC alleges that the "Blue Shield concept grew out of the lumber and mining camps of the Pacific Northwest" and the need to "provide medical care for their workers." Dkt. # 54 ¶ 36. As such, Regence's original purpose was to "benefit[] employers by providing coverage . . . to temporarily ill or injured workers so that they could continue to perform on the job." *Id.* ¶ 4. Meanwhile, "coverage for disabilities was excluded." *Id.*; *see also id.* ¶ 37 (describing an interest in not "providing coverage to any groups that were viewed as undesirable risks, including disabled individuals."). Accordingly, "[u]ntil the [ACA] was passed, health insurers continued to be free to discriminate in the design of their benefits." *Id.* ¶ 40. And while the ACA changed this, "Regence did not undertake [an effort to comply] when the ACA was first implemented." *Id.* ¶ 41. These allegations suggest discriminatory intent.

### iii. *Targeted Enforcement*

Finally, targeted enforcement is a relevant consideration, as it also speaks to discriminatory intent. *See Pac. Shores Properties, LLC*, 730 F.3d at 1162. According to the TAC,[8] "insureds with hearing loss that does not substantially affect a major life activity [*i.e.*, are

---

[7] Also, "[s]ince October 2022, individuals with mild, non-disabling hearing loss have access to OTC hearing aids . . . [t]hus . . . the pool of insureds affected by Regence's exclusions is overwhelmingly if not entirely hearing disabled." *Id.* ¶ 83.

[8] Similar allegations were also contained in the SAC. *See* Dkt. # 42 at 76. Therefore, at least with respect to this consideration, the SAC and TAC are comparable.

ORDER - 7

1   not disabled] are only minimally impacted by Regence's exclusion of hearing aids." Dkt. # 54
2   ¶ 155.  For instance, they can still "work, socialize, communicate, go to school, and otherwise
3   interact with others." *Id.*  By contrast, those insureds who have a hearing disability are
4   disproportionately impacted by Regence's policy, as they are often unable to perform any of
5   these functions.  *See id.*  Moreover, Regence has strictly enforced its ban on hearing aids, but *not*
6   on hearing exams.  *See id.* ¶ 42–44.[9]  And because the disabled and non-disabled alike utilize
7   such exams, but not hearing aids, Regence is selectively enforcing its exclusion policy.  *Id.*
8   These allegations also suggest a discriminatory intent.
9       Based on the totality of Plaintiffs' allegations—particularly those added in the TAC—the
10  Court concludes that Plaintiffs have plausibly alleged that Defendants engaged in proxy
11  discrimination in plan benefit design.

**B.      Federal Claim (Count I)**

The *Schmitt* decision made clear—section 1557 of the ACA[10] imposes an obligation on

---

[9] While Defendants take issue with this contention, *see* Dkt. # 63 at 7, the Court must disregard such assertions in ruling on a Rule 12(b)(6) motion.  *See, e.g.*, *ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000) (a plaintiff is the "master of the complaint"); *see also Bates v. Bankers Life and Cas. Co.*, 993 F. Supp. 2d 1318, 1355 (D. Or. 2014) (noting that disputed facts are better addressed at summary judgment).

[10] The provision's full language is as follows:
> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).  The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C.A. § 18116

ORDER - 8

each insurer to not discriminate in its plan benefit design.  *See* 965 F.3d at 954.  Defendants do not meaningfully challenge this premise.  *See generally* Dkt. # 57.  Instead, they make the following arguments in moving to dismiss Plaintiffs' ACA claim: that Plaintiffs (a) improperly defined the standard by which a proxy can be established and (b) inadequately pleaded allegations supporting that standard.  *See* Dkt. # 57 at 14–20.  The Court disposed of point (b) above.  *See supra* Section IV.A.  It need not address it again.  The Court addresses point (a) below.

        Defendants contend that Plaintiffs' use of a logical rather than statistical means to demonstrate fit is misguided.  Dkt. # 57 at 14.  The Court disagrees.  Granted, in *Schmitt*, the court indicated that those particular plaintiffs "*may* be able to meet [their] burden [to demonstrate fit]" on a qualitative rather than quantitative basis.  965 F.3d at 959 n.8 (emphasis added).  But it also said, in a more general sense, that "[a]t the pleadings stage, [it] do[es] not require a plaintiff to allege enough detail to state a prima facie case of discrimination [through the use of statistics]."  *Id.*  And that is exactly where this case presently sits.  So the Court is left with the concrete belief that statistics are just one of many permissible methods.  Should there be any doubt, other courts have routinely considered nonquantitative measures.  *See, e.g.*, *Davis v. Cmmw. Election Comm'n*, 844 F.3d 1087, 1094 (9th Cir. 2016) (applying qualitative measure to proxy based racial discrimination claim); *Children's All. v. City of Bellevue*, 950 F. Supp. 1491, 1500 (W.D. Wash. 1997) (considering circumstantial evidence in a proxy-based disability discrimination claim).

        For these reasons, the Court finds Defendants' argument in support of its motion to dismiss the section 1557 claim without merit.

        **C.**    **State Claims (Counts II & III)**

            **i.**   ***WLAD***

        The WLAD provides Washingtonians a right "to engage in insurance transactions . . . without discrimination."  RCW 49.60.030(1)(e).  Relatedly, the Washington Insurance Code

ORDER - 9

1  prohibits insurers from discriminating "in benefit design" based on "present or predicted
2  disability."  RCW 48.43.0128.  This includes discrimination "on the basis of the presence of any
3  disability of the insured or prospective insured."  RCW 48.30.300.  A plan discriminates "on the
4  basis" of a statutorily protected attribute when coverage turns exclusively on the presence or
5  absence of that attribute.  *See Johnson v. Met. Prop. & Cas. Ins. Co.*, 2010 WL 532449 (Wash.
6  Ct. App. 2010).

7  According to the TAC, Regence's allegedly discriminatory plan benefit design violates
8  those rights conferred by the WLAD.  Dkt. # 54 ¶¶ 182–96.  This is because any persons
9  prescribed hearing aids are disabled, and by specifically excluding hearing aids coverage, short
10 of cochlear implants, Regence is discriminating against such persons in its policy design.  *See id.*
11 ¶¶ 187, 188, 195.  In moving to dismiss this claim, Defendants argue (1) the hearing aid
12 exclusion is not discriminatory, (2) the exclusion is permitted by state regulation (and therefore
13 could not violate the WLAD), and (3) the WLAD does not provide a cause of action for
14 insurance code violations.  Dkt. # 57 at 23.  The second argument is determinative in
15 Defendants' favor.  Therefore, the Court need not reach the other arguments.

16 With respect to this second argument, Defendants contend that Washington's insurance
17 regulations establish minimum coverage benchmarks in plan design.  *See* Dkt. # 57 at 24 (citing
18 WAC 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(1)).  And because those benchmarks explicitly state that coverage for
19 "externally worn or surgically implanted hearing aids" is not required, Regence's plan cannot be
20 discriminatory, as a matter of law.  *Id.* (citing WAC 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(1)(b)(vii)).  In response,
21 Plaintiffs cite to *Schmitt*, noting that compliance with Washington's benchmark is merely the
22 starting point—it is not dispositive.  Dkt. # 60 at 31 (citing 965 F.3d at 955).  On this issue,
23 Defendants have the better argument.

24 *Schmitt*'s thrust was a discrimination claim pursuant to the ACA—not the WLAD.  *See*
25 965 F.3d at 945–60.  Therefore, *Schmitt* is inapt.  And Plaintiffs fail to provide further support
26 for their proposition, nor could the Court independently locate such authority.  By contrast, the

ORDER - 10

Washington Insurance Code and its regulations provide unequivocal direction on the issue. *See* RCW 48.02.060(1)(a) (conferring authority to promulgate rules enforcing Washington's Insurance Code); *see also See Pitts v. State, Dept. of Soc. and Health Services*, 119 P.3d 896, 902 (Wash. Ct. App. 2005) (addressing judicial deference to agency interpretations of state regulations). Therefore, no further analysis is required.

For this reason, the Court finds as a matter of law that Plaintiffs fail to state a WLAD claim based on discriminatory plan benefit design.

### ii.  *CPA*

To bring a CPA claim, a plaintiff must assert facts establishing, among other things, an "unfair or deceptive act or practice." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). And a violation of certain statutes, such as the WLAD, is a *per se* unfair or deceptive practice. *State v. Arlene's Flowers, Inc.*, 441 P.3d 1203, 1236 (Wash. 2019). But by Plaintiffs' own admission, the CPA claim floats or sinks on the alleged WLAD violation. Dkt. # 60 at 33. Without the WLAD as an anchor, the CPA claim cannot survive.

Therefore, the Court finds as a matter of law that Plaintiffs fail to state a CPA claim.

### D.  **Declaratory Judgment and Injunctive Relief (Counts IV & V)**

Finally, Plaintiffs seek declaratory and injunctive relief. Dkt. # 54 at 45–46. But the declaratory relief claim, as pleaded, depends on Plaintiffs' state discrimination claims. *See id.* ¶¶ 202–203. Because those state claims are inadequately pleaded, *see supra* Section IV.C, the declaratory relief claim also fails. Accordingly, the Court will only address Plaintiffs' injunctive relief claim.

Plaintiffs describe their case as one "seeking prospective and retrospective injunctive relief." *Id.* ¶ 101. Specifically, they request an injunction (1) prospectively "[e]njoin[ing] Regence from applying the same or similar hearing aid exclusions now and in the future" and (2) retrospectively "requiring Regence to solicit and process claims for hearing aids that were not

ORDER - 11

submitted for payment due to its policy" and to "reprocess and pay claims that were wrongfully denied under its policies." *Id.* ¶ 204.  In doing so, Plaintiffs assert they "are not required to allege deliberate discrimination or intentional animus" because this case seeks injunctive relief (rather than compensatory damages). *Id.* ¶ 101 (citing *Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 3429076, at *3 (N.D. Cal. 2018)).  Defendants move to dismiss this claim for two independent reasons.

First, Defendants argue Plaintiffs' request for *prospective* injunctive relief is moot. Dkt. # 57 at 26.  This, they assert, is because Plaintiffs are now receiving the coverage they seek to obtain by injunction, and that coverage is now explicitly required by recent legislation.  *Id.*  On this issue, the Court disagrees.  Although intervening legislation may moot a case, it may only do so to the extent it "settle[s] a controversy involving only injunctive or declaratory relief." *Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987).  And here, the controversy is not so settled.  Indeed, the TAC states that Regence's plan now provides hearing aid coverage of up to $1,000 per year, *see* Dkt. # 54 ¶¶ 13, 48, which appears consistent with recently passed state law requiring such coverage.  *See* RCW 48.43.135(3).  But according to Plaintiffs, the $1,000 coverage "is wholly inadequate to meet [their] need[s]." Dkt. # 54 ¶¶ 110, 114.  Thus, contrary to Defendants' assertions, Plaintiffs do not appear to be receiving the coverage they seek to obtain by injunction.  Accordingly, their request for prospective injunctive relief is not moot.

Second, Defendants argue Plaintiffs' request for *retrospective* injunctive relief is improper because it "is nothing more than a request for compensatory damages disguised as injunctive relief to avoid the *mens rea* requirement." Dkt. # 57 at 27.[11]  On this issue, both sides

---

[11] Defendants' sole authority for this proposition is *Wit v. United Behav. Health*, 58 F.4th 1080 (9th Cir. 2023) ("*Wit I*").  *See* Dkt. # 57 at 27–28.  But this decision has since been vacated and replaced.  *See Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit II*").  In addition, the Court is doubtful that the holdings in *Wit I* or *Wit II* extend outside the ERISA context.  *See C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, 2023 WL 8543495, at *5–6 (W.D. Wash. 2023) (declining to extend *Wit II* because the ACA "affords broader relief" than ERISA).  Nonetheless, the Court does not reach this issue because, as discussed below, Plaintiffs have adequately alleged the *mens rea* requirement necessary for a compensatory damages request.

ORDER - 12

agree that a showing of discriminatory intent is only required if a plaintiff is seeking compensatory damages (rather than injunctive relief). *See* Dkt. # 54 ¶ 101; Dkt. # 57 at 27. But since Plaintiffs *have* adequately pled discriminatory intent through their proxy theory, the true nature of their remedy is immaterial. In other words, regardless of whether Plaintiffs' request is properly characterized as one for injunctive relief or compensatory damages, it survives because Plaintiffs successfully met the *mens rea* requirement. *See supra* Section IV.A. Defendants' argument is therefore without merit.

Accordingly, the Court dismisses Plaintiffs' declaratory relief claim, but denies dismissal of the injunctive relief claim.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss the TAC. Dkt. # 57. Counts II, III, and IV, Dkt. # 54 ¶¶ 182–203, are DISMISSED with prejudice. This is because the pleading deficiencies for these claims are legal rather than factual; so further amendment would be futile. *See, e.g., Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018). The remaining claims, Dkt. # 54 ¶¶ 127–181, 204, may proceed.

DATED this 19th day of March, 2024.

The Honorable Richard A. Jones
United States District Judge

ORDER - 13